IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RYDELL MILLS, | § | |
| | § | No. 303, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. N1708012318 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:  January 9, 2019
Decided:  January 14, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court.  **AFFIRMED** in part, **REVERSED** in part, **VACATED**, and **REMANDED**.

Bernard J. O'Donnell, Esquire, Office of Public Defender, Wilmington, Delaware, for Appellant, Rydell Mills.

Maria T. Knoll, Esquire, Department of Justice, Wilmington, Delaware, for Appellee, State of Delaware.

**STRINE**, Chief Justice:

The defendant below, Rydell Mills, appeals from his convictions and sentencing order in the Superior Court for various offenses, including cocaine and heroin drug dealing and two counts of resisting arrest with force or violence. These convictions arise out of a single incident in which two police officers caught Mills in a dark alley with a digital scale in his hands, Mills resisted the two officers' arrest, and the police ultimately found a substantial amount of cocaine and smaller amount of heroin nearby.

This appeal presents three issues. Each of the first two issues involves a claim by Mills that he was improperly subjected to multiple convictions or sentences for one offense, under either double jeopardy principles or Delaware's statutory codification of those principles, which essentially comes down to a question of legislative intent. First, Mills contests the fact that he was convicted of two counts of resisting arrest with force or violence, both deriving from the attempt of two police officers working together to arrest him. Mills argues that when a defendant resists the attempt of multiple officers to arrest him, the multiplicity doctrine prohibits the State from dividing the resisting arrest offense into separate counts for each officer, as occurred in this case. Second, Mills argues that his separate convictions for resisting arrest with force or violence and heroin drug dealing cannot stand because the State used the resisting arrest offense as an aggravating factor to elevate the drug dealing offense to a higher felony grade. Mills contends that under 11 *Del. C.* § 206,

which is essentially a statutory codification of the *Blockburger*[1] test, the State cannot use a separate offense as an aggravating element of a higher-grade crime and then have the defendant convicted of both that separate offense and that other higher-grade crime.

As to the first issue, we hold that convicting a defendant of separate counts of resisting arrest with force or violence based solely on the number of arresting officers violates the multiplicity doctrine drawn from the Double Jeopardy Clauses of the United States and Delaware Constitutions. In light of the relevant statutory language, the resisting arrest offense's place in the overall statutory scheme, its apparent purpose, case law from other jurisdictions, and the inequitable results that would follow from allowing multiple convictions based solely on the number of arresting officers, we conclude that the General Assembly intended for the unit of prosecution for resisting arrest with force or violence to be the arrest itself, not the arresting officer whose arrest the defendant resists. In short, we find that the General Assembly intended it to be one count per arrest, not one count per officer. It was therefore multiplicitous to convict Mills twice when the charges arose solely from two officers' joint attempt to arrest him at the same time and place.

As to the second issue, we hold that a defendant can be sentenced for both resisting arrest with force or violence and aggravated drug dealing, even when the

---

[1] *Blockburger v. United States*, 284 U.S. 299 (1932).

resisting arrest offense is a necessary aggravating factor for the drug dealing conviction. Here too, we base our decision on the General Assembly's intent as to these two offenses. The legislative history of the drug dealing statute shows that the General Assembly intended to allow separate convictions for not just drug dealing, but any separate offense that acts to aggravate the level of the drug dealing charge. In other words, the General Assembly intended the drug dealing statute to work like the felony murder statute, where the defendant can be convicted of both felony murder and the felony that elevated the homicide to felony murder.

The third and final issue on appeal deals with an allegedly deficient jury instruction. Here, Mills argues that the trial court erred by omitting from its jury instruction for heroin drug dealing the required element that he intended to deliver the heroin. As to this last issue, we hold that this omission was plain error. Although it is regrettable that defense counsel missed the mistake below, this omission of a critical element of the drug dealing offense is glaring and fundamental enough to require reversal even under a plain error standard of review, especially given that the omission was prejudicial under the circumstances of this case.

We therefore affirm in part and reverse in part the defendant's convictions, vacate his sentence, and remand to the Superior Court for further proceedings consistent with this opinion.

# I.    Background

## A. *The Arrest*[2]

At approximately 11:30 p.m. on August 17, 2017, two Wilmington Police Department officers, Corporals Donald Palmatary and Robert DiRocco, went to the area of a residence in Wilmington in response to an anonymous call that requested that the police check out the backyard. Entering the alley behind the block, both officers drew their handguns and used the flashlights attached to their guns to illuminate the dark alley. As they exited the alley into the backyard, Officer Palmatary saw a man, later identified as Mills, near the steps at the back of the house. Mills saw the officer and said he "was just taking a piss."[3] Officer Palmatary then ordered Mills to show his hands and, when Mills did so, saw a digital scale in his hands.

As Officer Palmatary was re-holstering his weapon to detain Mills, Mills took off and tried to charge past the officer to the exit of the alley. Both Officers Palmatary and DiRocco tried to grab Mills, but he escaped their grasp. Officer Palmatary then called for backup and ordered Mills to stop resisting as he and Officer DiRocco took him to the ground again. Mills got back to his feet, continued to struggle, and was again taken to the ground by the officers. Flailing his arms and

---

[2] The facts, which are not materially disputed in this appeal, are unless otherwise noted drawn from the parties' opening and answering briefs.

[3] App. to Opening Br. at A025 (Direct Examination of Officer Palmatary).

4

elbows as he tried to break free, Mills struck Officer DiRocco with an elbow. When backup arrived, Mills and the officers were almost through the alley onto the street. Officer Palmatary grabbed Mills's legs as Officer DiRocco grabbed one of Mills's hands and, with the assistance of other officers who arrived as backup, secured Mills's arms behind his back and handcuffed him. As a result of this incident, Officer DiRocco sustained abrasions and a sprained foot.

In searching the area, the police found various packages of cocaine and heroin, crack cocaine on the ground where Mills was initially standing, three cell phones, four digital scales, and other paraphernalia. In total, the police recovered about 41 grams of cocaine and 0.5 grams of heroin in packaging. The police also got a warrant to search one of the cell phones belonging to Mills, and found text messages suggestive of drug sales.

### B. Procedural History

After being arrested, Mills was indicted for aggravated possession of cocaine, cocaine drug dealing, heroin drug dealing, possession of drug paraphernalia, felony resisting arrest by force or violence (two counts), second-degree assault, and loitering. The State *nolle prossed* the second-degree assault offense before trial. After a three-day trial in February 2018, the jury returned guilty verdicts on all of the pending offenses except aggravated possession of cocaine, for which the jury

could not reach a unanimous agreement on at that time. The State entered a *nolle prosequi* on the aggravated possession of cocaine charge.

On March 1, 2018, the State filed a motion to declare Mills a habitual offender as to his two convictions for resisting arrest with force or violence.[4] On June 1, 2018, the Superior Court granted the State's motion and sentenced him to an aggregate of 44 years and six months at Level V incarceration, suspended after 20 years for decreasing levels of supervision.

Mills timely appealed from the Superior Court's sentencing order.

## II.    Analysis

### A. *Issues on Appeal*

On appeal, Mills claims that the Superior Court erred in three ways. The first two issues each involve an argument by Mills that he was improperly subjected to multiple convictions or sentences for one offense. As to the first issue, Mills argues that the Superior Court improperly sentenced him twice for resisting arrest with force or violence, which Mills casts as a violation of the multiplicity doctrine arising from the Double Jeopardy Clauses of the United States and Delaware Constitutions because the charges arose out of a single incident and course of conduct. As to the

---

[4] For each resisting arrest conviction, the sentencing order states: "The defendant is declared a Habitual Offender and is sentenced pursuant to 11 Del. C. 4214(d) on this charge." Opening Br. Ex. A (Sentencing Order). The Superior Court found that Mills had been convicted of at least two prior felonies prior to this present matter. App. to Opening Br. at A007. Therefore, just one conviction for resisting arrest with force or violence would have qualified Mills as a habitual offender.

6

second issue, Mills contends that the trial court erred by sentencing him for both resisting arrest with force or violence and heroin drug dealing because the former was an included offense of the latter under 11 *Del. C.* § 206, which is essentially Delaware's codification of the test laid out by the United States Supreme Court in *Blockburger v. United States*[5] to determine whether two offenses are the same for double jeopardy purposes. The last issue, which involves an allegedly deficient jury instruction, falls into a different category. Here, Mills argues that the trial court erred by omitting from its jury instruction for heroin drug dealing the required element that he intended to deliver the heroin. Regrettably, Mills did not raise any of these issues below and denied our Superior Court an opportunity to address them in the first instance.

### *B. Standard of Review*

Because Mills did not present any of his claims on appeal to the court below, we review for plain error.[6] Under this standard, the error "must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process," and our review "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show

---

[5] 284 U.S. 299 (1932).
[6] *See Zugehoer v. State*, 980 A.2d 1007, 1013 (Del. 2009).

manifest injustice."[7]    We have "previously held, however, that a multiplicity

violation may constitute plain error."[8]  We have also held that, even in the context

of plain error review, issues of statutory interpretation are reviewed *de novo*.[9]

### C. The Superior Court Erred by Sentencing Mills Twice for Resisting Arrest with Force or Violence

Mills first claims that the Superior Court erred by sentencing him twice for

resisting arrest with force or violence, which he contends was a violation of the

multiplicity doctrine under the United States and Delaware Constitutions.[10]   In

response, the State argues that there was no error because each charge was associated

with a different police officer.[11]

The multiplicity doctrine, which is rooted in the prohibition against double

jeopardy, prohibits the State from dividing one crime into multiple counts by

splitting it "into a series of temporal or spatial units."[12]  In approaching multiplicity

---

[7] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[8] *Handy v. State*, 803 A.2d 937, 940 (Del. 2002); *accord Zugehoer v. State*, 980 A.2d 1007, 1013 (Del. 2009) (quoting *Handy*, 8803 A.2d at 940).

[9] *See Patrick v. State*, 922 A.2d 415, 2007 WL 773387, at *2 (Del. 2007) (TABLE) ("[We] find that if the trial judge misinterpreted the resisting arrest statute while finding [the defendant] guilty . . . the error would be material, serious and fundamental in character . . . .   Therefore, it is immaterial whether [the defendant] specifically raised the issue below because in either case this court reviews questions of law *de novo*.   Because this issue of law involves statutory interpretations, our review is *de novo*.").

[10] Opening Br. at 7–8; U.S. CONST. amend. V; DEL. CONST. art. I, § 8.

[11] Answering Br. at 11.

[12] *Spencer v. State*, 868 A.2d 821, 823–24 (Del. 2005); *accord Brown v. Ohio*, 432 U.S. 161, 169 (1977) (holding that the State may not charge multiple counts simply by "dividing a single crime into a series of temporal or spatial units"); *Williams v. State*, 796 A.2d 1281, 1285 (Del. 2002) ("Dividing one offense into 'multiple counts of an indictment violates the double jeopardy

8

questions, we have generally weighed whether the defendant's acts are sufficiently differentiated by time, location, or intended purpose.[13]  Under this approach, "[t]he critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act."[14]  But, in considering double jeopardy claims based on multiple punishments, we have also observed that whether a defendant can be punished multiple times is a question "of statutory construction," and we must ask whether "the General Assembly intend[ed] to impose more than one punishment for a single occurrence of criminal conduct."[15]

---

provisions of the constitutions of the State of Delaware and of the United States.'" (quoting *Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989))).

[13] *See Williams*, 796 A.2d at 1286–87 (adopting a test for possession with intent to deliver cocaine based on whether "'the possessions are sufficiently differentiated by *time, location or intended purpose*'" and stating that "[t]his test consists of factors a court may use in determining, under the circumstances, whether two violations of same statute have occurred" (quoting *Rashad v. Burt*, 108 F.3d 677, 681 (6th Cir. 1997)); *Feddiman*, 558 A.2d at 288–89 (weighing the timing and location of separate acts of sexual assault to determine whether multiple counts of sexual assault were permissible under the multiplicity doctrine); *Spencer*, 868 A.2d at 824 (weighing the "temporal and spatial separation between" two gun shots, as well as whether the defendant "had formed a separate intent to harm" the victim "between the two gun shots," to determine whether the State could charge the defendant for two counts of assault).

[14] *Spencer*, 686 A.2d at 823.

[15] *Poteat v. State*, 840 A.2d 599, 603–04 (Del. 2003); *see also Brown*, 432 U.S. at 165 ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."). *Brown* is the origin of the prohibition on "dividing a single crime into a series of temporal or spatial units." *Id.* at 169; *see also Handy v. State*, 803 A.2d 937, 940–41 (Del. 2002) ("Prosecutors may not manufacture additional counts of a particular crime by the 'simple expedient of dividing a single crime into a series of temporal or spatial units.'" (quoting *Brown*, 432 U.S. at 169)).

The State's argument that Mills's conduct amounts to two violations of the resisting arrest statute is premised on the notion that, based on the language of the resisting arrest statute, the General Assembly intended to provide for a separate punishment for each officer whose arrest the defendant resists. Mills disputes the State's reading of the statutory text and, citing similar cases from other jurisdictions under statutory schemes similar to ours, argues that the General Assembly's classification of resisting arrest as an offense related to custody, rather than an offense against the person, indicates legislative intent that there be only one count per arrest. He also points to the inequitable consequences that would flow from the State's theory as cutting against its reading of the statute. Because this is a pure statutory interpretation issue, the standard of review is effectively *de novo*.[16]

The resisting arrest statute, 11 *Del. C.* § 1257, reads as follows:

**§ 1257 Resisting arrest with force or violence, class G felony; resisting arrest, class A misdemeanor.**

(a) A person is guilty of resisting arrest with force or violence when:

(1) The person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person by use of force or violence towards said peace officer; or

---

[16] *See Patrick v. State*, 922 A.2d 415, 2007 WL 773387, at *2 (Del. 2007) (TABLE).

10

(2) The person intentionally flees from a peace officer, who is effecting an arrest or detention of the person, by use of force or violence towards said peace officer; or

(3) While a peace officer is effecting an arrest or detention of a person, the person causes physical injury to the peace officer.

Resisting arrest with force or violence is a class G felony.

(b) A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest or detention of the person.

Resisting arrest is a class A misdemeanor.

Mills was charged and convicted twice under subsection (a)(1): once for resisting Officer Palmatary and once for resisting Officer DiRocco.[17] In other words, even though Officer Palmatary and Officer DiRocco jointly worked together to arrest Mills, Mills was convicted of two counts of resisting arrest.

Subsection (a) of § 1257 is a relatively new provision. In the original Criminal Code in 1972, resisting arrest was only a misdemeanor and closely resembled the language of the current statute's subsection (b).[18] The General Assembly added subsection (a) in 2006 to establish a higher penalty for resisting arrest when the

---

[17] *See* App. to Opening Br. at A20 (Indictment).
[18] *See* 58 Del. Laws ch. 497, § 1 (1972) ("A person is guilty of resisting arrest when [he] intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of himself or another person or intentionally flees from a peace officer who is effecting an arrest.").

11

defendant uses "force or violence."[19] In effect, the 2006 amendment split subsection (b) into two provisions—putting the "prevents a peace officer from effecting an arrest or detention" clause in subsection (a)(1) and the "flees from a peace officer who is effecting an arrest or detention" clause in subsection (a)(2)—and added an aggravating factor for the "use of force or violence."[20] The 2006 amendment also added a third provision (subsection (a)(3)) for cases where the defendant caused physical injury to the arresting officer, regardless of whether the defendant intended to do so.[21]

Focusing solely on the statutory text, it is unclear whether the General Assembly intended to provide for a separate punishment for each officer whom the defendant resists. On the one hand, the statute refers to "a peace officer,"[22] which the State reads as making the peace officer the "unit" of the crime, such that each arresting officer provides the basis for a separate count. In support of the State's position, some courts in other jurisdictions have, in determining the unit of their resisting arrest and other criminal statutes, distinguished between the use of the pronouns "a" and "any," with the former suggesting that whatever immediately follows the pronoun is the unit of the crime and the latter suggesting that something

---

[19] *See* Del. H.B. 362 syn., 143d Gen. Assem., 75 Del. Laws ch. 310, § 1 (2006) ("This Bill establishes the penalty for resisting arrest with violence or struggle as a class G felony and keeps resisting arrest as a class A misdemeanor.").

[20] 11 *Del. C.* § 1257(a)(1)–(2), (c).

[21] *Id.* § 1257(a)(3).

[22] *Id.* § 1257(a)(1).

12

else may be the unit of the crime.[23]  On the other hand, Delaware's statute also refers to "an arrest or detention,"[24] which Mills claims is the unit of the crime, and the "a" versus "any" logic could apply with equal force here.  On this view, the number of arresting officers would be immaterial.  In support of this interpretation, an intermediate appellate court in Oregon has interpreted its own resisting arrest statute, which provided that "[a] person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest" and defined resistance in terms of "creat[ing] a substantial risk of physical injury," as allowing for one count per arrest, not per officer.[25]  The language of the Oregon statute is very similar to our own.[26]  Likewise, an intermediate appellate court in New Jersey has interpreted its resisting arrest statute, which provided that "[a] person is guilty . . . if he purposely prevents a law enforcement officer from

---

[23] *See Wallace v. State*, 724 So.2d 1176, 1178–81 (Fla. 1998) (reasoning that there is "a critical difference between the words 'a' and 'any' in construing the legislative intent of a statute," with the use of the term "any officer" creating ambiguity in Florida's resisting arrest statute); *cf. People v. Floyd*, 663 N.E.2d 74, 77 (App. Ct. Ill. 1996) (holding that Illinois's resisting arrest statute, which provided that "[a]n individual commits the offense of resisting arrest when he 'knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity,'" allows for separate counts for each arresting officer (quoting 720 ILCS 5/31-1 (West 1993))).

[24] 11 *Del. C.* § 1257(a)(1).

[25] *State v. Owens*, 979 P.2d 284, 287 & n.1 (Ct. App. Or. 1999) (quoting ORS 162.315) (internal quotation marks omitted).

[26] *See* 11 *Del. C.* § 1257(a)(1) ("A person is guilty of resisting arrest with force or violence when . . . [t]he person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention . . . by use of force or violence towards said peace officer."); *id.* § 1257(b) ("A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention . . . .").

effecting a lawful arrest . . . [and] he . . . uses or threatens to use physical force or violence against the law enforcement officer," as providing for one count per arrest, "no matter how many police officers are attempting to effect the arrest."[27] Again, that statute's language closely resembles our own. In addition, the title of Delaware's resisting arrest statute—"[r]esisting arrest with force or violence" for the felony version and "resisting arrest" for the misdemeanor version[28]—supports the notion that the arrest, not the peace officer, is the unit of the offense.

To resolve this ambiguity, we must consider the statute's apparent purpose. In effect, the parties offer two competing theories: the State's theory being that the statute is primarily intended to protect peace officers from harm, and Mills's theory being that it is primarily intended to ensure that peace officers can effectively enforce the law. The former theory would support a one-count-per-officer reading of the statute, in the same way that we might read the first-degree murder statute as allowing the State to charge a defendant who intentionally kills two different people at the same time and place with two counts of murder because the statute is intended to protect the murder victim. The latter theory, by contrast, would support the one-count-per-arrest reading of the statute, in the same way that we treat first-degree arson cases as one-count-per-building cases, even when there are multiple people

---

[27] *State v. Parsons*, 636 A.2d 1077, 1082 (N.J. Super. Ct. App. Div. 1994) (quoting *N.J.S.A.* 2C:29–2).

[28] 11 *Del. C.* § 1257.

14

inside the building, and theft cases as one-count-per-heist cases, even when the property is owned by multiple different people, because these statutes focus on the protection of property, not the individual.[29]

Our case law does not provide clear guidance on this issue,[30] but in light of the resisting arrest statute's place in the overall statutory scheme, we believe that the effective law enforcement theory fits best. Unlike assault, murder, and other offenses intended to protect individuals from physical harm, the General Assembly put resisting arrest in Chapter 5, Subchapter VI of the Criminal Code, entitled "Offenses Against Public Administration," and specifically in Subpart E, entitled "Escape and Other Offenses Relating to Custody."[31] Subchapter VI is filled with offenses designed to ensure effective and honest public administration, such as bribery,[32] perjury,[33] witness and juror tampering,[34] providing a false statement to law

---

[29] *See Handy v. State*, 803 A.2d 937, 940 (Del. 2002) (holding that the unit of prosecution for first-degree arson is the building, not the individuals residing in the building); *Reader v. State*, 349 A.2d 745, 747 (Del. 1975) ("[W]here property belonging to different owners is taken at the same time and place as a single or continuous act or transaction, that taking constitutes a single criminal offense [of theft] . . . ."). *See also* 11 *Del. C.* § 841(c) (providing for different tiers of theft, ranging from a Class A misdemeanor to a Class B felony, based on the value of the property stolen).

[30] The only clear description of the resisting arrest statute's purpose we have found in our case law describes that purpose as "to foster the effective administration of justice, to deter resistance to arrest and to provide for the safety both of peace officers and the citizens of Delaware." *Jones v. State*, 745 A.2d 856, 873 (Del. 1999). That description refers to both theories, though the effective law enforcement theory arguably receives greater emphasis.

[31] *See* 11 *Del. C.* §§ 1201–1274.

[32] *Id.* § 1201.

[33] *Id.* §§ 1221–23.

[34] *Id.* §§ 1263, 1266.

enforcement,[35] refusing to aid a police officer,[36] obstructing fire-fighting operations,[37] and escape.[38] The decision by the General Assembly to categorize resisting arrest as an Offense Against Public Administration is consistent with one leading treatise's description of resisting arrest as an "obstruction form of offense" and categorization of the offense as an "Offense Against Public Authority and Government."[39] Likewise, the Model Penal Code categorizes resisting arrest as an "Offense Against Public Administration," and specifically in the subcategory of "Obstructing Governmental Operations; Escapes."[40] The Model Penal Code's explanatory note describes offenses in this subcategory as "involv[ing] conduct by which the actor attempts some interference with the administration of justice or other governmental operation."[41]

---

[35] *Id.* § 1245A.

[36] *Id.* § 1241.

[37] *Id.* § 1243.

[38] *Id.* §§ 1251–53. *See also id.* § 1207 (improper influence); *id.* § 1211 (official misconduct); *id.* § 1212 (profiteering); *id.* § 1239 (wearing a disguise during the commission of a felony); *id.* § 1240 (terroristic threatening of public officials or servants); *id.* § 1244 (hindering prosecution); *id.* § 1245 (falsely reporting an incident); *id.* § 1246 (compounding a crime); *id.* § 1250 (offenses against law enforcement animals); *id.* § 1257A (use of an animal to avoid capture); *id.* § 1260 (misuse of prisoner mail); *id.* § 1271 (criminal contempt); *id.* § 1273 (unlawful grand jury disclosure).

[39] *See* CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 569, Westlaw (last updated Aug. 2018) (internal quotation marks omitted).

[40] Model Penal Code § 242.2. The Model Penal Code provision provides that a person commits resisting arrest "if, for the purpose of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." *Id.*

[41] *Id.* § 242.1 (Explanatory Note for Sections 241.1–242.8).

Crimes intended to protect individuals from physical harm, by contrast, tend to be found in Chapter 5, Subchapter II of the Criminal Code, entitled "Offenses Against the Person."[42] Subchapter II also contains several provisions that punish harm to law enforcement officers specifically,[43] which suggests that the General Assembly knows where to put an offense when it's designed to protect the individual officer rather than ensure effective public administration. For example, the Subchapter II offense of second-degree assault reduces the "serious physical injury" requirement to just "physical injury" where the victim is a law enforcement officer.[44]

The effective law enforcement theory is bolstered by the description of the resisting arrest offense in the official Commentary to the Criminal Code, which this Court has previously looked to for guidance in double jeopardy cases.[45] The resisting arrest portion of the Commentary explained that the provision was "designed to make resisting an arrest by a peace officer a substantive offense," with "[t]he goal" being "to have him submit, calmly explain to the officer that the arrest

---

[42] 11 *Del. C.* §§ 601–792.

[43] *See id.* § 601(c) (providing for greater punishment for offensive touching when the victim is a law enforcement officer); *id.* § 612(a)(3) (providing for greater punishment for second-degree assault when the victim is a law enforcement officer); *id.* § 613(a)(5) (requiring only serious physical injury, instead of serious physical injury by means of a deadly weapon or dangerous instrument, for first-degree assault when the victim is a law enforcement officer); *id.* § 636(a)(4) (requiring only recklessness, instead of intention, for first-degree murder where the victim is a law enforcement officer).

[44] *Id.* § 612(a).

[45] *See Poteat v. State*, 840 A.2d 599, 605 (Del. 2003) (citing the Commentary); *Stigars v. State*, 674 A.2d 477, 482–83 (Del. 1996) (same).

17

was not warranted, and if that fails to explain it to the committing magistrate."[46] The Commentary further justified the provision as "good policy to insist that [peace officers'] efforts to make an arrest meet with no physical resistance."[47] The Commentary thus focuses on the facilitating the orderly administration of justice, not protecting the arresting officer from harm.

The statute's provision of a penalty even in situations where the risk to officer safety is remote also supports the public administration view. Indeed, the original misdemeanor version of the resisting arrest statute did not require that the defendant use force or violence or cause any physical harm to an arresting officer. Instead, a defendant could be charged with resisting arrest simply for running away from the officer or otherwise attempting to prevent the arrest by nonviolent means.[48] Meanwhile, there is little indication that the General Assembly intended the 2006 amendments, which hewed closely to the language of the misdemeanor version (with the addition of an aggravating factor for "the use of force or violence"), to effect any change to the unit of prosecution. Instead, the singular purpose of the amendments

---

[46] DELAWARE CRIMINAL CODE WITH COMMENTARY 371 (1973)
[47] *Id.*
[48] *See* 11 *Del. C.* § 1257(b) ("A person is guilty of resisting arrest when the person . . . intentionally flees from a peace officer who is effecting an arrest or detention of the person.").

18

appears to have been to create a higher penalty for what would otherwise be a misdemeanor when the defendant resists with force or violence.[49]

We also note that courts in other jurisdictions appear to have, for the most part, emphasized the public administration purposes of their resisting arrest statutes and held that the appropriate unit of prosecution is the arrest, not the officer.[50] As the Appellate Division of the Superior Court of New Jersey explained:

> Resisting arrest on a single occasion is one offense no matter how many police officers are attempting to effect the arrest. If a person resists arrest by running away from five law enforcement officers who give chase, the person is not committing five offenses. The offense is

[49] *See* Del. H.B. 362 syn., 143d Gen. Assem., 75 Del. Laws ch. 310, § 1 (2006) ("This Bill establishes the penalty for resisting arrest with violence or struggle as a class G felony and keeps resisting arrest as a class A misdemeanor.").

[50] *See Lardner v. United States*, 358 U.S. 169, 173–78 (1958) (acknowledging a plausible officer-protection rationale but emphasizing the goal of "prevent[ing] hindrance to the execution of official duty" and holding that firing a single shotgun blast that wounded two officers constituted only one violation of the federal resisting arrest statute); *Wallace v. State*, 724 So. 2d 1176, 1180 (Fla. 1998) (holding that the unit of prosecution for Florida's resisting arrest statute is the arrest, not the officer, in part because the placement of the statute in a chapter on "obstructing justice . . . indicates a concern over the obstruction of justice by resisting arrest and not just the physical protection of law enforcement officers" (internal quotation marks omitted)); *State v. Good*, 851 S.W.2d 1, 5–6 (Mo. Ct. App. 1992) (holding that the unit of prosecution for Missouri's resisting arrest is the arrest, reasoning that "[t]he gravamen of the offense is resisting an arrest, not flight a law enforcement officer," and "[t]he gist of the offense is not dependent upon how many officers were attempting to arrest the defendant"); *State v. Owens*, 979 P.2d 284, 287 (Ct. App. Or. 1999) (observing that Oregon's resisting arrest statute "does not focus on the potential of harm to the individual officers attempting to make the arrest, but rather on the threat to civil order," and holding that the appropriate unit of prosecution is the arrest); *State v. Parsons*, 636 A.2d 1077, 1082 (N.J. Super. Ct. App. Div. 1994) ("Resisting arrest on a single occasion is one offense no matter how many police officers are attempting to effect the arrest. . . . The offense is against the criminal justice system, not against the law enforcement officer . . . ."); *cf. Purnell v. State*, 827 A.2d 68, 681–82 (Md. 2003) ("[I]t is inappropriate to determine the unit of prosecution for the [common law] crime of resisting arrest by reference to the number of law enforcement officers resisted, or by the number of officers put at risk by the resistance."). *But see People v. Floyd*, 663 N.E.2d 74, 572 (Ct. App. Ill. 1996) ("[M]ultiple convictions for resisting arrest are appropriate where the record reveals that defendant committed multiple acts of resisting arrest against four separate officers.").

against the criminal justice system, not against the law enforcement officer or officers individually whose attempt to effect the arrest is an element of the offense. Even though using or threatening to use physical force or violence against a law enforcement officer would raise the offense to a crime, the crime of resisting arrest is still against the system of justice, not against the officer individually.[51]

Finally, the State's view of the resisting arrest statute could lead to inequitable results. As the United States Supreme Court has observed when interpreting the federal resisting arrest statute, "[p]unishments totally disproportionate to the act . . . could be imposed because it will often be the case that the number of officers affected will have little bearing on the seriousness of the criminal act."[52] The Florida Supreme Court agrees, warning that adopting the officer-centered view could lead to "an endless number of counts of resisting arrest simply depending on the number of officers present."[53] In a similar vein, our sister court in Maryland wrote:

> Defining the unit of prosecution by the number of officers involved in executing the legal duty would lead to an absurd result. Imagine an armed individual waiving his gun in the direction of the 100 officers unsuccessfully attempting to induce his surrender. Or imagine the motorist who continues driving despite an order to pull-over, resulting in a chase involving 100 squad cars, each occupied by two officers. Is it reasonable to believe that the legislature contemplated the single acts of resistance to constitute 100 counts of resisting an officer with violence and 200 counts of resisting an officer without violence?[54]

---

[51] *Parsons*, 636 A.2d at 1082.
[52] *Lardner*, 358 U.S. at 177.
[53] *Wallace*, 724 So.2d at 1181.
[54] *Purnell*, 827 A.2d at 83 (quoting *Wallace*, 724 So.2d at 1180) (internal quotation marks omitted).

Even if those particular scenarios seem extreme, the fundamental point is sound. In Delaware, a misdemeanor resisting arrest violation is punishable by up to a year of incarceration,[55] and a felony resisting arrest violation is punishable by up to two years.[56] According to the State's theory of the statute, then, a defendant who runs away from ten officers trying to arrest her, or physically resists five officers trying to arrest her, could be punished with up to ten years in prison. In many cases, the punishment for resisting arrest could eclipse the punishment for the underlying crime.

For these reasons, we hold that the unit of prosecution for resisting arrest with force or violence is the arrest, not the officer, and charging separate counts based solely on the number of arresting officers violates the multiplicity doctrine. We therefore reverse one of Mills's convictions for resisting arrest, vacate his sentence, and remand to the Superior Court for resentencing.

### D. The Superior Court Properly Sentenced Mills for Both Resisting Arrest with Force or Violence and Heroin Drug Dealing

Mills argues next that the Superior Court erred by sentencing him for both resisting arrest with force or violence and heroin drug dealing because the former was an included offense of the latter.[57] Specifically, Mills points out that resisting

---

[55] *See* 11 *Del. C.* § 4206(a).
[56] *See id.* § 4205(b)(7).
[57] Opening Br. at 14–16.

21

arrest with force or violence was a necessary "aggravating factor" for the tier of drug dealing for which he was sentenced, with the addition of that aggravating factor elevating the offense from a Class D felony to a Class C felony.[58] That, Mills argues, means he could not be convicted of both offenses because 11 *Del. C.* § 206 prohibits convicting a defendant of more than one offense where one offense "is established by the proof of the same or less than all the facts required to establish the commission of the" second offense.[59] The State argues that § 206 is not controlling here because the General Assembly intended to allow the defendant to be convicted of both drug dealing and the predicate aggravating factor for that tier of drug dealing, as evidenced by a statement to that effect in the synopsis of the bill that created the drug dealing offense.[60]

Section 206 effectively codifies the test laid out by the United States Supreme Court in *Blockburger v. United States*[61] for determining whether two offenses are the same for double jeopardy purposes.[62] Under this test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each

---

[58] *Id.* at 14–15.
[59] 11 *Del. C.* § 206(a)(1), (b)(1).
[60] Answering Br. at 17–19.
[61] 284 U.S. 299 (1932).
[62] *Stigars v. State*, 674 A.2d 477, 482 (Del. 1996) (noting that "this Court has generally employed the *Blockburger* test," which "is consistent with 11 *Del. C.* § 206")

provision requires proof of a fact which the other does not."[63]  We have previously

noted, however, that *Blockburger* and § 206 are "only an aid to statutory

construction," and they "do[] not negate clearly expressed legislative intent."[64]  If "a

better indicator of legislative intent is available," a literal application of *Blockburger*

and § 206 "does not apply."[65]  Put another way, this Court's precedents indicate that

§ 206 must be read in the context of the specific case before the Court, and, if the

other provisions of the Criminal Code and accompanying legislative history

evidence a clear legislative intent to allow (or prohibit) convictions under two

separate statutes, that legislative intent controls.  This is consistent with the more

general canon of statutory interpretation "that, to the extent of any conflict, the

expression of legislative intent in a more specific and later-enacted statute controls

the former, more general statute."[66]

Under a *Blockburger* or § 206 analysis, resisting arrest with force or violence

would appear to be an included offense of drug dealing, such that Mills could not be

convicted of both.  The drug dealing offense at issue here provides, in relevant part,

---

[63] *Blockburger*, 284 U.S. at 304.
[64] *Stigars*, 674 A.2d at 482; *see also Poteat v. State*, 840 A.2d 599, 602–06 (Del. 2003) (citing *Stigars* for that same proposition and reasoning that the Commentary to the Criminal Code was a better indicator of legislative intent than the *Blockburger* test and the text of § 206).
[65] *Stigars*, 674 A.2d at 482.
[66] *State v. Cook*, 600 A.2d 352, 355 n.6 (Del. 1991) ("We find [the defendant's] reliance upon 11 *Del. C.* § 206(a), as a contrary indication of legislative intent, unpersuasive.  Generally accepted principles of statutory construction provide that, to the extent of any conflict, the expression of legislative intent in a more specific and later-enacted statute controls the former, more general statute.").

that "any person who . . . manufactures, delivers, or possesses with the intent to manufacture or deliver a controlled substance, and there is an aggravating factor . . . shall be guilty of a class C felony."[67]  Without an aggravating factor, a defendant charged under those circumstances could be convicted of only the Class D felony version of drug dealing.[68]  The aggravating factor is necessary to convict a defendant of the Class C version, which carries a substantially longer sentence.[69]  The drug dealing statute lists several potential aggravating factors, including commission of the offense "within a protected school zone";[70] commission of the offense "within a protected park or recreation area, or church, synagogue or other place of worship";[71] commission of the offense "in a vehicle";[72] the involvement of a juvenile in dealing or receiving the drugs under certain circumstances;[73] and certain types of resisting arrest.[74]  Here, the State used the aggravating factor that applies when "[t]he defendant, during or immediately following the commission of any offense in this title . . . prevented or attempted to prevent a law-enforcement officer . . . from effecting an arrest or detention of the defendant by use of force or violence towards

---

[67] 16 *Del. C.* § 4753(2).
[68] *See id.* § 4754(1).
[69] *See* 11 *Del. C.* § 4205(b)(3)–(4) (providing for up to fifteen years for Class C felonies and eight years for Class D felonies).
[70] 16 *Del. C.* § 4751A(1)(a).
[71] *Id.* § 4751A(1)(b).
[72] *Id.* § 4751A(1)(c)
[73] *Id.* § § 4751A(1)(d).
[74] *Id.* § 4151A(1)(e).

24

the law-enforcement officer."[75]  That language tracks the resisting arrest with force

or violence provision of which Mills was convicted, which provides that "[a] person

is guilty of resisting arrest with force or violence when . . . [t]he person intentionally

prevents or attempts to prevent a peace officer from effecting an arrest or detention

of the person or another person by use of force or violence towards said peace

officer."[76]  Because resisting arrest with force or violence can be "established by the

proof of . . . less than all the facts required to establish the commission of" the drug

dealing offense of which Mills was convicted,[77] a literal application of § 206 would

therefore seem to preclude convicting Mills of both offenses.

But here, "a better indicator of legislative intent" shows that the General

Assembly did not intend for § 206 to apply.[78]  Specifically, the synopsis to the bill

that created the drug dealing offense clarifies that "[a] person could be convicted of

both a drug offense with this aggravating factor [for resisting arrest with force or

violence] and a separate charge of [resisting arrest with force or violence]."[79]  That

---

[75] *Id.* § 4751A(1)(e)(1).

[76] 11 *Del. C.* § 1257(a)(1).

[77] 11 *Del. C*. § 206(b)(1).

[78] *Stigars v. State*, 674 A.2d 477, 482 (Del. 1996).

[79] Del. H.B. 19 syn., 146th Gen. Assem. (2011).  The full synopsis states:

> The section sets forth five aggravating factors – (1) Protected School Zone; (2) Protected Park Zone; (3) Vehicle; (4) Juvenile Co-conspirator; and (5) Resisting Arrest Force or Violence.  The first four are modified from present drug law.  The fifth is new.  It is based on the idea that a drug defendant who resists arrest with force or violence represents a more serious societal problem than one who does not.  While resisting arrest with force or violence is already a crime (11 Del. C. § 1257(a)), it is a class G felony, which will generally have no sentencing

25

is about as clear a statement of legislative intent as one could ask for, other than a statement to that effect in the statutory text itself. And given this context and the statutory language in the pertinent Code sections specifying the two crimes, it would be odd to find a statement in the Code itself that a defendant could be convicted of both resisting arrest with force or violence and aggravated drug dealing.

That a defendant can be convicted of both an offense that contains an aggravating factor and a separate offense, the elements of which mirror that aggravating factor, is not novel in our criminal law. For example, we have previously held that the General Assembly intended to provide for separate sentences for both felony murder and the underlying felony, and thus that the defendant could be sentenced for both without violating double jeopardy.[80] In one of those cases, we noted that neither the felony murder statute nor the statute for the underlying felony "expressly discusses the problem of multiple convictions and sentences under both," and § 206 was the only statute that "directly addresses this

---

consequences when paired with a drug felony. The aggravating factor is designed to address the drug defendant who fights the law enforcement officer making an arrest, and the drug defendant who flees in a vehicle at high speeds. A person could be convicted of both a drug offense with this aggravating factor and a separate charge of § 1257. The State will need to charge any aggravating factor, and will need to prove the aggravating factor as an element of the offense. Since the aggravating factors for a protected school zone and for a protected park or recreation area are similar in intent, if they are both present in the same case, they would be counted as one aggravating factor rather than two.

*Id.*
[80] *See Whalen v. State*, 434 A.2d 1346, 1356–59, 1370–71 (Del. 1981) (felony murder and first-degree rape); *Martin v. State*, 433 A.2d 1025, 1038–39 (Del. 1981) (felony murder and burglary).

problem."[81]   Despite the lack of any express statement, and even though § 206, "[a]pplied literally, . . . might light to the conclusion that [the underlying felony] is a lesser included offense of [felony murder]," we reasoned that "at least in the context of [f]elony [m]urder and underlying felonies, we do not believe that the [General Assembly] intended such a literal application."[82]   Likewise, we have held that the General Assembly intended to impose separate sentences for possession of a firearm during the commission of a felony and the underlying felony.[83]

Consistent with the focus of these cases on giving effect to the intended application of the statute, we hold that the General Assembly intended to provide for separate punishments for drug dealing and resisting arrest with force or violence, even when the latter is a necessary aggravating factor for the former.

### E. The Superior Court Erred by Failing to Include the Required Intent-to-Deliver Element in Its Jury Instructions for Heroin Drug Dealing

Lastly, Mills argues that the Superior Court erred by failing to state in its jury instructions for heroin drug dealing that the jury must find beyond a reasonable doubt that he had the intent to deliver the heroin, an essential element of the offense.[84]   The State acknowledges that the jury instruction was imperfect, but argues that it was sufficient because both the prosecutor and defense counsel

---

[81] *Whalen*, 434 A.2d at 1357.
[82] *Id.*
[83] *See Flamer v. State*, 490 A.2d 104, 110–12 (Del. 1983).
[84] Opening Br. at 18–20.

mentioned the intent-to-deliver element during closing arguments, and because the judge referenced the definition of the term "deliver" in the instruction for heroin drug dealing.[85]

To find Mills guilty of the heroin drug dealing charge of which he was convicted, the State had to prove that Mills (1) knowingly; (2) possessed; (3) heroin; (4) with the intent to deliver the heroin; and (5) during the commission of the offense or immediately following the offense, attempted to prevent a law enforcement officer from effecting an arrest or a detention by use of force or violence toward the officer.[86] Here, the jury instruction omitted element (4), regarding his intent to deliver the heroin.

After closing arguments, the judge provided the jury with its instructions. First, the judge read the pertinent parts of the indictment to the jury. Relevant here, the judge stated:

> Count III. Drug Dealing Heroin. Rydell Mills, on or about the 17th day of August, in the County on New Castle, State of Delaware, did knowingly possess *with intent to deliver* heroin, or a mixture containing heroin, a controlled substance as set forth under Delaware law, and during the commission of the offense or immediately following the offense, did attempt to prevent a law-enforcement officer from effecting an arrest or a detention by use of force of violence toward the law-enforcement officer.[87]

---

[85] Answering Br. at 20–24.
[86] 16 *Del C*. § 4753(2); *id.* § 4751A(1)(e)(1).
[87] App. to Opening Br. at A051 (Jury Instructions) (emphasis added).

In reading the indictment, the judge did mention the "intent to deliver" requirement. But, following a reading of the other charges in the indictment, the judge broke down the elements and omitted the "intent to deliver" element from the heroin drug dealing instruction:

> Drug Dealing in Heroin, Count III. In order to find the defendant guilty of this charge, you must find the State has proved the following four elements:
>
> 1. The defendant possessed a substance.
>
> 2. The substance possessed was Heroin, or any mixture containing Heroin, or had a chemical structure substantially similar to Heroin, or that was specifically designed to produce an effect substantial to Heroin;
>
> 3. The defendant acted knowingly;
>
> 4. While he possessed the substance, the defendant intentionally prevented or attempted to prevent a law enforcement officer from effecting an arrest or detention by use of force or violence towards the law enforcement officer.
>
> Again, the terms "possession" and "knowingly" already have been defined for you.
>
> "Intentionally" means it was the defendant's conscious objective or purpose to prevent, attempt to prevent, or flee from arrest or detention.
>
> "Deliver" already has been defined for you.
>
> The terms "force" and "violence" should be given their ordinary meaning.[88]

---

[88] *Id*. at A053.

Because Mills did not object to the jury instruction below, we review for plain error. "When reviewing for plain error it is important to note that [a] defendant is not entitled to a particular instruction, but has an unqualified right to a correct statement of the substance of the law."[89] Jury instructions are adequate on review if they are "reasonably informative and not misleading, judged by common practices and standards of verbal communications."[90] Evaluation of the jury instruction requires this Court to consider the entire instruction, rather than viewing a statement in a vacuum.[91] The instructions given do not need to be perfect, and may be deemed adequate "if they allow a jury to intelligently perform its duty in returning a verdict."[92] Plain error also assumes a failure of oversight, rather than a tactical decision by defense counsel.[93] We have previously held that "it is plain error to fail to instruct the jury on the necessary elements of the crime."[94]

We believe that the trial court's failure to instruct the jury that Mills needed to possess the intent to deliver heroin was glaring and fundamental enough to count as plain error. Ultimately, the trial court completely omitted an entire element of an

---

[89] *Lowther v. State*, 104 A.3d 840, 846 (Del. 2014) (internal quotation marks and citations omitted).
[90] *Id.* (internal citations and quotation marks omitted).
[91] *Flamer v. State*, 490 A.2d 104, 128 (Del. 1983) (internal citations and quotation marks omitted).
[92] *Id*. (internal citations and quotation marks omitted).
[93] *Keyser v. State*, 893 A.2d 956, 961 (Del. 2006).
[94] *Taylor v. State*, 464 A.2d 897, 899 (Del. 1983); *see also Smith v. Horn*, 120 F.3d 400, 415 (3d Cir. 1997) ("A jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state of its obligation to prove facts constituting every element of the offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights.").

offense. Mills was entitled to a correct statement of the substance of the law, and he did not receive one. Although the parties' counsel each referred to the intent-to-deliver element during their closing arguments, "[t]he trial judge is charged with the responsibility for instructing the jury,"[95] and excusing the court's error because the parties correctly described the law would turn on its head the maxim—repeated by the trial judge in this case—that the jury is supposed to listen to the judge, not the lawyers, when it comes to the law.[96] Likewise, the fact that the indictment charged that Mills possessed the intent to deliver heroin does not make up for the jury instructions' failure to state that element. Just as indictments are not evidence of the facts, nor are they evidence of the law.

The omission in this case was also prejudicial. The police did not actually catch Mills in the act of dealing heroin. Instead, the State had to use circumstantial evidence, such the use of scales, packaging, cell phones, and text messages, to prove his intent to deliver. Moreover, although the police recovered a large quantity of cocaine at the scene, they found only about half a gram of heroin (packaged in about 55 bags[97]), which the evidence suggests could be consistent with either dealing or

---

[95] *Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001) (internal citations and internal quotation marks omitted).

[96] *See* App. to Opening Br. at A50–51 ("I will now instruct you on the law. You must listen to and consider all of these instructions together in reaching your verdict. . . . You must apply the law, as I state it, to the facts as you find them to be. You must apply the law as I state it, even if you disagree with the law or believe it should be otherwise.").

[97] Answering Br. at 7–8.

31

personal use. According to one of the State's own witnesses, a heroin addict might buy "a couple bundles up to a log," meaning between 26 and 130 bags of heroin, at a time.[98]

We also note that the reason for this omission seems to have been simple oversight by the court, and was not the product of any tactical decision by defense counsel to request that the court not charge the jury on this element. As mentioned, when the judge was reading all of the counts in the indictment to the jury, she did include the phrase "with intent to deliver heroin." Additionally, immediately following her reading of the elements of heroin drug dealing, the judge stated that "delivery" had already been defined for the jury, even though that word did not appear elsewhere in the instruction. It thus appears that the judge meant to include the intent-to-deliver element in the jury instruction, but mistakenly left it out. Indeed, when instructing the jury as to the charge of cocaine drug dealing, the judge did list "intent to deliver" as an element of the offense.[99]

_____

[98] App to Answering Br. at B13.

[99] The cocaine drug dealing instruction reads:

> Drug Dealing in Cocaine, Count II. In order to find the defendant guilty of this charge, you must find the State has proved the following five elements beyond a reasonable doubt:
>
> 1. The defendant possessed a substance.
>
> 2. The substance possessed was Cocaine, or a mixture containing Cocaine, or had a chemical structure similar to Cocaine, or that it was designed to produce an effect substantially similar to Cocaine;

32

We therefore hold that the Superior Court committed plain error in failing to instruct the jury as to the required element of intent to deliver heroin. Accordingly, we reverse Mills's conviction for heroin drug dealing and remand for a new trial, unless the State accepts a modification of that conviction to the lesser included offense of knowing possession of heroin with the aggravating factor of resisting arrest with force or violence (a Class A misdemeanor that lacks the intent-to-deliver element).[100]

---

3. The defendant acted knowingly;

4. The defendant possessed 20 grams or more of the substance; and

5. *When the defendant possessed the substance, he had the intent to deliver it.*

I previously have defined for you the terms "possession" and "knowingly," and those definitions apply to this charge as well.

"Deliver" means the actual, constructive or attempted transfer from one person to another of an illegal or prohibited drug, either directly or through another person.

App. to Opening Br. at A052 (emphasis added).

[100] 11 *Del. C.* § 4763(c). We took a similar action in *Waters v. State*, 443 A.2d 500, 506 (Del. 1982):

The maximum benefit to the defendant of this ruling under the facts of this case would be reduction of his conviction to Manslaughter and resentencing thereon. The State, however, may elect to retry the defendant for Murder Two or to accept the entry of a judgment of conviction of Manslaughter. Accordingly, the judgment below is reversed and the case will be remanded for a new trial unless, within 10 days of the issuance of this opinion, the State files in this Court an election to modify the judgment of conviction to the lesser offense of Manslaughter. In the latter event, the cause will be remanded for modification of the judgment of conviction to Manslaughter and imposition of sentence thereon.

*Id.*

## III.    Conclusion

The Superior Court committed plain error by sentencing Mills twice for resisting arrest with force or violence and by failing to instruct the jury as to the required element of intent to deliver heroin, but it did not err in sentencing Mills for both resisting arrest with force or violence and heroin drug dealing.  Although it is regrettable that trial counsel for Mills did not raise any of these issues below, as he should have, the two errors that the trial court committed are still obvious and fundamental enough to justify reversal.  We therefore affirm in part and reverse in part the Superior Court's judgment, vacate Mills's sentence, and remand for further proceedings consistent with this opinion.