IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRONE CLARK, | § | |
| | § | |
| Defendant-Below | § | No. 93, 2021 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1907004115(K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: December 1, 2021
Decided: February 24, 2022

Before **VALIHURA**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

# O R D E R

This 24th day of February, 2022, after careful consideration of the parties' briefs, the argument of counsel, and the record on appeal, it appears to the Court that:

(1)    Tyrone Clark was babysitting two female minors—ages 12 and 6—on July 5, 2019.  With their mother's permission, the females stayed the night with Clark at his residence.  During the night, Clark showed the 12-year-old pornography on his phone.  The 12-year-old testified that, after this, Clark sexually assaulted her. After the assault, the 12-year-old called her mother and fled Clark's house.

(2)     Early in the morning of July 6, police arrested Clark.  The police interviewed Clark in the early afternoon that day for 70 minutes.  By this time, Clark had been at the station for about ten hours and, according to the police, decided to sleep on a bench rather than in the cell he was offered.  During his interview, Clark confessed to certain sexual acts with the victim but denied having intercourse with her.

(3)     The State secured a 13-count indictment against Clark.  After a five-day trial, a jury found Clark guilty of ten felony sex offenses.  Specifically, the jury returned guilty verdicts on the following counts:  Count One—attempted sexual abuse by a person in a position of trust in the first degree; Count Two—sexual abuse of a child by a person of trust in the first degree; Count Three—attempted rape in the second degree; Count Four—rape in the second degree; Count Five—sexual abuse of a child by a person of trust in the first degree; Count Six—rape in the fourth degree; Count Seven—dangerous crime against a child; Count Eight—sexual abuse of a child by a person of trust in the second degree; Count Nine—dangerous crime against a child; and Count Twelve—unlawful sexual contact in first degree.

(4)     All parties agreed that, for sentencing purposes, Count Six should merge with Count Seven and Count Eight should merge with Count Nine.[1]  But the court denied Clark's motion to merge eight of the other counts into four and granted

_____

[1] *Clark*, 2021 WL 244335, at *1.

the State's application for enhanced pedophile sentencing on Counts One through Six and Nine under 11 *Del. C.* § 4205A(a)(2).[2]

(5)   The Superior Court sentenced Clark to 125 years of Level V incarceration followed by probation. This sentence included five consecutive terms of 35 years at Level V, each of which was suspended after 25 years.

(6)   Clark argues first that the police violated his constitutional right against self-incrimination when they interviewed him on July 6, 2019. He claims that his statements to police were involuntary because of the conditions of the interrogation and his intoxication. The Superior Court evaluated and denied these and related claims in a bench ruling after a two-day suppression hearing. We review the court's denial of Clark's motion to suppress for abuse of discretion.[3]

(7)   The record shows that the police arrested Clark early on July 6 and brought him to the Troop 3 station around 3 a.m. The police offered Clark a meal at 11:30 a.m. Clark was handcuffed to a bench when he arrived and remained there— despite an offer to move to a cell—until his interrogation began at 1:03 p.m. The interrogation was video recorded. A detective read Clark his *Miranda* rights.[4] Clark said he understood those rights and was willing to participate in the interview. The written transcript does not show signs of involuntariness or intoxication. Neither

---

[2] *Id.*
[3] *Jackson v. State*, 990 A.2d 1281, 1288 (Del. 2009).
[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

does the video, which the Court has reviewed. Clark had also been at Troop 3, where he was presumably not permitted to drink alcohol, for more than 10 hours before questioning began, which undercuts his intoxication claim.

(8) The determination of whether an accused has knowingly and voluntarily waived his *Miranda* rights must be based on a review of the totality of the circumstances. Quoting the United States Supreme Court, this Court has recognized that this inquiry has "two distinct dimensions":

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.[5]

(9) We are satisfied that the Superior Court faithfully conducted the inquiry outlined above, as reflected in its thoughtful bench ruling. After hearing the testimony of four police witnesses and three civilian witnesses and reviewing the video recording of the challenged interview, the court found that

> after considering the totality of the circumstances . . . Mr. Clark's statement was voluntary. He was 63 years of age, was provided his *Miranda* warnings, was not visibly under the influence as observed on the video by the Court, was not physically threatened or intimidated, was interviewed in the soft interview room which, although it may not have been overly soft, was the least formal—at least it was the least

---

[5] *Marine v. State*, 607 A.2d 1185, 1195–96 (Del. 1992) (quotation marks omitted) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

formal interview room available at Troop 3, and was not lied to or tricked by the investigating detectives. The State provided him food and bathroom breaks during the time they held him.[6]

(10) It is also clear that the court carefully considered Clark's argument that the interviewing officers employed a coercive interrogation technique. On this point, the Superior Court observed that

> in finding Mr. Clark's statement to be voluntary, the Court has considered his arguments that the questioning techniques of the detectives overbore his will. Under the totality of the circumstances, the Court does not so find. Urging the defendant to tell the truth, together with the mannerisms of the detectives in the room during the questioning, did not objectively rise to the level that would overbear the will of a reasonable person. Although Mr. Clark appeared frustrated during isolated times and sad as he admitted certain things, his reaction to the detectives also does not support a finding that his confession was not voluntary. Here the State has met its burden in that regard also to a preponderance of the evidence.[7]

(11) Based upon our review of the record, which shows a proper reading of *Miranda* rights accompanied by a knowing, voluntary, and intelligent waiver, we conclude that the Superior Court did not abuse its discretion when it declined to suppress Clark's interview.

(12) Clark's second claim is that the Superior Court should have declared a mistrial after a key witness for the State, SANE[8] nurse Dawn Culp, vouched for the

---

[6] App. to Answering Br. at B166–67.
[7] *Id*. at 167–68.
[8] The acronym "SANE" stands for "sexual assault nurse examiner."

credibility of the victim. As with the previous claim, we review a trial court's denial of a motion for mistrial for abuse of discretion.[9]

(13) Culp was the nurse who conducted the exam of the complaining witness on July 6, 2019. During her testimony, she stated that "[w]hen [the victim] came in seeking treatment stating that he hurt her, we did the SANE exam and I believe what she said when she came in."[10] Clark did not object, but the Superior Court *sua sponte* interrupted the State's examination and gave a curative instruction: "[t]he witness gave an opinion about the truth or falsity of any testimony. I am going to instruct you to disregard that. You are the ultimate finders of fact in that regard."[11]

(14) After a recess, the defense moved for a mistrial. The court denied the motion, citing the curative instruction, and offered to give another curative instruction. The defense requested a general curative instruction—rather than one highlighting the specific response by Culp—and the court gave it.

(15) Because the trial court gave two curative instructions—one *sua sponte* despite Clark's failure to object to the testimony—in response to a single vouching incident that did not prompt an objection, we conclude that the court's denial of Clark's mistrial motion was not an abuse of discretion.

---

[9] *Lloyd v. State*, 249 A.3d 768, 779 (Del. 2021).
[10] App. to Opening Br. at A428.
[11] *Id.* at A429.

(16)   Clark also claims that the Superior Court was wrong to sentence him on various counts under the enhanced pedophile sentencing scheme found in 11 *Del. C.* § 4205A(a)(2).   Section 4205A(a)(2) requires the Superior Court to order a mandatory sentence of "not less than 25 years up to life" if "[t]he victim of the instant offense is a child less than 14 years of age."[12]  Clark is correct that a jury must find any fact—here, the child's age—that triggers an enhanced sentence.[13]

(17)   The State requested and received enhanced sentencing for Counts One through Six and Nine.  It concedes, however, that, for Counts One through Six, the Superior Court did not instruct the jury that, to convict, it must find that the victim was under the age of 14.  But the instructions for Counts Seven and Nine did require the jury to find that the victim was younger than 14.[14]  Because the jury convicted Clark on Counts Seven and Nine, it therefore found that the victim was under 14—a determination supported by the record, as both the victim and her mother testified as to her birth date—which satisfies Section 4205A(a)(2). Enhanced sentencing was therefore appropriate.

(18)   Finally, Clark argues that Counts One through Four should merge into either two counts or a single count.  He relies on the Double Jeopardy Clause of the

---

[12] 11 *Del. C.* § 4205A(a)(2).

[13] *Rauf v. State*, 145 A.3d 430, 433 (Del. 2016) (invalidating statute that allowed judge, rather than jury, to find sufficient aggravating circumstances to impose a death sentence.).

[14] App. to Opening Br. at A1008 ("In order the find Defendant guilty of dangerous crime against a child, you must find . . . [that] the child was less than 14 years of age at the time of the charged offense."); *Clark*, 2021 WL 244335, at *2.

7

Fifth Amendment, which provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]"[15] The Double Jeopardy Clause generally prevents successive prosecutions as well as duplicative charging within a single prosecution, under what is known as the multiplicity doctrine.[16] As the United States Supreme Court explained in *Blockburger v. United States*,[17] "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

(19)  It is the case that a strict application of *Blockburger* would require merger of Counts One through Four.  Taking the charges in order, Count One (attempted sexual abuse of a child by a person in a position of trust) would merge with Count Two (sexual abuse of a child by a person in a position of trust), because attempted offenses definitionally do not require proof of an element extraneous to the completed offense.  11 *Del. C.* § 206, which codifies the *Blockburger* analysis, accordingly prohibits separate convictions for an attempt crime and the corresponding completed crime.  Count Three (attempted rape in the second degree) would merge with Count Four (rape in the second degree) by the same logic.  The

---

[15] U.S. CONST. amd. V.
[16] *Zugehoer v. State*, 980 A.2d 1007, 1013 (Del. 2009) (merger of three counts of home invasion).
[17] *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

State does not contest that, absent contrary legislative intent, *Blockburger* would mandate the merger of these counts.

(20) As the Superior Court recognized, however, the General Assembly has explicitly endorsed duplicative punishment under the circumstances of this case.[18] The statutes criminalizing rape in the second degree (11 *Del. C.* § 772) and sexual abuse of a child by a person of trust in the first degree (11 *Del. C.* § 778) include a proviso that "[n]othing in this section shall preclude a separate charge, conviction and sentence for any other crime set forth in this title, or in the Delaware Code."[19] These anti-merger provisions control over the statutory-elements test articulated in *Blockburger*. As we have explained, "if the . . . provisions of the Criminal Code and accompanying legislative history evidence a clear legislative intent to allow (or prohibit) convictions under two separate statutes, that legislative intent controls."[20]

---

[18] *Clark*, 2021 WL 244335, at *2.

[19] 11 *Del. C.* § 772(b). The language in 11 *Del. C.* § 778(7) is nearly identical: "[n]othing contained in this section shall preclude a separate charge, conviction and sentence for any other crime set forth in this title, or in the Delaware Code."

[20] *Mills v. State*, 201 A.3d 1163, 1175–76 (Del. 2019). The United States Supreme Court has come to the same conclusion, *see Missouri v. Hunter*, 459 U.S. 359, 368–369 (1983) ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.").

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

10