UNITED STATES of America, Appellee,

v.

**Daniel THOMAS, Appellant.**

**No. 88–3044.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1988.

Decided Jan. 6, 1989.

Noel H. Thompson, Arlington, Va. (Appointed by this Court), for appellant.

Kevin A. Forder, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant Daniel Thomas challenges his criminal conviction in the United States District Court for the District of Columbia. Thomas argues that the district court erroneously failed to suppress incriminating evidence at his trial, and that he is consequently entitled to have his conviction set aside. In the alternative, he contends that he should be granted a new trial on the ground that the government improperly presented evidence in its case-in-chief purporting to explain why the government had failed to obtain fingerprint evidence from certain seized items.[1] Because we find these contentions to be without merit, we affirm the judgment of the district court.

---

1. Thomas originally presented a third claim, seeking to be removed from incarceration in Washington, D.C., on the grounds that he had formerly worked as a correctional officer in the D.C. criminal justice system and that he there-fore faced a substantial risk of serious harm from other inmates. Thomas' counsel has withdrawn this claim in reliance on representations by the government that Thomas is currently serving his sentence in Tucson, Arizona.

## I. BACKGROUND

On June 16, 1987, sometime shortly after 4:00 a.m., three police officers entered an apartment complex courtyard in northeast Washington, D.C., and saw several individuals gathered on the outside step in front of an apartment building.[2] Among the persons gathered was appellant Thomas, who was carrying a brown gym bag. At the sight of the police, the group moved hurriedly inside the apartment house entrance. One of the police officers, Kenneth N. Jones, ran to the front door of the building and peered through a diamond-shaped window that allowed him to see the entryway and the staircase leading directly from the door to the second floor. The officer saw Thomas on the second floor landing crouched over his gym bag. According to Officer Jones' testimony, Thomas placed the bag in front of an apartment door on the second floor. Thomas then began down the stairway, leaving the bag in front of the door. At that moment, Officer Jones opened the door and ordered Thomas and the other individuals out of the building.

After the group, including Thomas, had moved outside, Officer Jones entered the public hallway of the building, mounted the stairs to the second floor, and retrieved the bag that Thomas had left there. He took the bag down the stairs and out of the building. Without asking for permission, Officer Jones opened the bag and found that it contained a 20–gauge sawed-off shotgun, a 9–millimeter semi-automatic weapon, and live rounds of ammunition. The gym bag also contained 23 bags of a substance that field-tested positive for cocaine. In addition, the bag held personal effects, including a video club membership card with Thomas' name on it.

In a three-count indictment, Thomas was charged with possessing five grams or more of cocaine with intent to distribute, 21 U.S.C. §§ 841(a), (b)(1)(B)(ii), carrying a short-barreled shotgun and semi-automatic

pistol during a drug trafficking crime, 18 U.S.C. § 924(c), and possessing an unregistered sawed-off shotgun, 26 U.S.C. §§ 5861(d), 5871. Thomas' motion for suppression of all physical evidence and his statements to the police was denied by the district court on November 17, 1987. Following a jury trial on February 11, 12, and 16, 1988, Thomas was found guilty on all three counts.

## II. ANALYSIS

### A. The Motion to Suppress

Thomas first argues that his conviction should be set aside because it is grounded in illegally seized evidence. The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. The district court ruled that Thomas had lost any reasonable expectation of privacy in the gym bag by abandoning it at the top of the stairs. The court therefore permitted the government to present at trial the evidence found in Thomas' bag, even though the officers had no probable cause or warrant to search the bag.

 A warrantless search or seizure of property that has been "abandoned" does not violate the fourth amendment. *See, e.g., Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.) (citation omitted), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). The test for abandonment in the search and seizure context is distinct from the property law notion of abandonment: it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object.

---

2. To the extent these facts pertain to the question of the challenged search and seizure, we have relied exclusively on the testimony that was made available to the district court at the November 17, 1987, suppression motion hearing. *See* W. LaFave, Search and Seizure § 11.7(c) (1987).

*See, e.g., United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973).[3] To determine whether there is abandonment in the fourth amendment sense, the district court must focus on the intent of the person who is alleged to have abandoned the place or object. *See United States v. Anderson,* 663 F.2d 934, 938 (9th Cir.1981). The test is an objective one, and intent may be inferred from "words spoken, acts done, and other objective facts." *Colbert,* 474 F.2d at 176. Because the ultimate determination hinges on the outcome of a factual inquiry into intent, a finding of abandonment is reviewed under the clearly erroneous standard. *See United States v. Brady,* 842 F.2d 1313, 1315–16 (D.C.Cir.1988); *see also United States v. Kendall,* 655 F.2d 199, 203 (9th Cir.1981), *cert. denied sub nom. Akers v. United States,* 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982) ("even where arguably mixed with questions of law, [the trial court's finding of abandonment] is subject to attack only if clearly erroneous").

■■■ We recognize that there are many circumstances where the mere act of setting down a bag would not constitute abandonment. The law obviously does not insist that a person assertively clutch an object in order to retain the protection of the fourth amendment. But the facts to which Officer Jones testified at the suppression hearing provide a broader basis upon which to support the district court's finding. According to his testimony, which was credited by the district court, Thomas fled into the entrance of an apartment building once he caught sight of police officers. When Officer Jones reached the door to the building, he observed that Thomas had mounted the stairs and was busying himself with the contents of the gym bag. Before Officer Jones opened the door, Thomas had turned from the bag and had started walking back down the stairs, leaving the bag behind him on the floor of a public hallway.[4] Given these circumstances, we find no error in the district court's determination that Thomas intended for fourth amendment purposes to abandon the bag at the top of the stairs. His actions were in relevant respects similar to those of a person who tosses an object during police pursuit: in order to prevent discovery of his bag by the police, Thomas left it behind in a public place where he retained no reasonable expectation of privacy in it.[5] *Cf. United States v. Collis,* 766

---

3. *See also City of St. Paul v. Vaughn,* 306 Minn. 337, 237 N.W.2d 365 (1975). In *Vaughn,* the defendant was observed by police who saw him tuck his eyeglass case under a counter at a dry cleaning establishment. The police retrieved the case and found drug paraphernalia inside. The court held that even though the defendant did not intend to relinquish *ownership* in his case, he nevertheless relinquished his reasonable expectation of *privacy* in the case when he hid it in such a public place: "Where the presence of the police is lawful and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property, the property will be deemed abandoned for the purposes of search and seizure." *Id.* 237 N.W.2d at 371 (footnotes omitted).

4. We are not persuaded by Thomas' suggestion that his abandonment of the bag was somehow the product of a "chase[ ]" by the police. *See* Brief for Appellant at 4. Rather, from the testimony available at the suppression hearing, it appears that Thomas fled into the building when he saw the police enter the courtyard. Thus, the testimony in this case does not reveal even the kind of investigatory pursuit related in *Michigan v. Chesternut,* —— U.S. ——, 108 S.Ct.

1975, 100 L.Ed.2d 565 (1988), in which the Court found that there was no "attempt to capture or otherwise intrude upon respondent's freedom of movement." *Id.* 108 S.Ct. at 1980 (footnote omitted). Moreover, at no time between the first sighting and the ultimate retrieval of Thomas' gym bag did the police improperly induce abandonment of the bag. Even in cases where there is police pursuit, that factor alone is not enough to render an abandonment "involuntary." *United States v. Brown,* 663 F.2d 229, 231 (D.C.Cir.1981) (en banc). Here, by contrast, Thomas had fully abandoned the bag *before* the police ordered the individuals out of the building. We therefore do not confront in this case the more difficult issue of police conduct that itself improperly causes abandonment. *See generally* W. LaFave, Search and Seizure § 2.6(b) at 472–74 (1987).

5. The legal significance of Thomas' acts is not altered by the fact that he might have intended to retrieve the bag later. His ability to do so would depend on the fortuity that other persons with access to the public hallway would not disturb his bag while it lay there unattended. *Cf. United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.1983) (explaining that the defendant's

F.2d 219 (6th Cir.) (per curiam), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed. 2d 124 (1985) (defendant who threw a bag containing cocaine over a fence during pursuit by drug agents had "abandoned the shoulder bag and failed to establish a legitimate subjective expectation of privacy" in it).

Thomas relies heavily on *United States v. McCray,* Crim. No. F–6147–87 (D.C. Sup.Ct. March 3, 1988), *reported in* 116 Wash.L.Rep. at 677 (April 5, 1988), to support his contention that the evidence seized from the gym bag should have been suppressed. In that case, the Superior Court of the District of Columbia determined that police officers had had no probable cause to chase the defendant, and that evidence he had tossed away during the officers' pursuit should have been suppressed at trial.[6] Thomas argues that the facts in *McCray* are "very close to those in the present case." Brief for Appellant at 5. Two critical points, however, render the *McCray* case inapposite. First, Thomas' decision to abandon his bag at the top of the stairs was not the product of a police chase. Rather, he fled there at his own instigation when he caught sight of the police coming into the courtyard. The abandonment was therefore complete by the time the officers had *any* contact with him. And once the bag was abandoned, the officers did not require probable cause to search it. Second, the issue of abandonment was apparently not raised by the parties in the *McCray* case, and the court did not address it. The *McCray* court's reasoning therefore does not provide guidance in the present case, where the issue of abandonment is squarely presented.[7]

## B. *The Fingerprint Evidence*

■ At trial, the prosecution presented evidence in its case-in-chief tending to show

that the police had been unable to recover any fingerprints from the items discovered in the gym bag. *See* Transcript at 65–80. Thomas contends that this evidence was presented in order to impeach his argument that the items in his bag had been placed there by others, and he urges this court to find that the evidence was irrelevant and prejudicial when presented, thereby entitling him to a new trial. Appellant concedes that no objection was made at trial to the introduction of this evidence, and we therefore review the record to determine whether the admission of this evidence constituted plain error. *See United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–1047, 84 L.Ed.2d 1 (1985). We conclude that it did not.

As the Supreme Court has noted, "[W]hen addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record." *Id.* at 16, 105 S.Ct. at 1046. In fact, having looked at the presentation of this evidence in the context of the whole record, we see no error at all in the admission of the fingerprint testimony. In his opening statement, Thomas' counsel introduced the argument that

> [t]he evidence is gonna show that when all of the items that were recovered from the bag ... were ... submitted for fingerprint analysis, they didn't get a fingerprint off of those items.... They didn't get Mr. Thomas's print off the narcotics, and they didn't get Mr. Thomas's print off the drugs.

Opening Transcript at 9. Having thereby invited the inference that the lack of fingerprint evidence was exculpatory, Thomas cannot now argue that the prosecution was not entitled to present competent testimony

"ability to recover the satchel [he had discarded] depended entirely upon fate and the absence of inquisitive (and acquisitive) passers-by").

6. The issue arose in *McCray* in response to the defendant's motion to vacate his conviction on the ground that he received ineffective assistance of counsel. His trial counsel had failed to move for suppression of the evidence seized, and the court concluded that such a motion would have been successful as part of its finding

that he had not received reasonably effective assistance from his attorney.

7. We also note that the continuing validity of the *McCray* court's discussion of investigatory pursuits is questionable in light of the Supreme Court's subsequent decision in *Michigan v. Chesternut,* —— U.S. ——, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

to contradict that inference. In the prosecution's case-in-chief, it became important to demonstrate that the lack of fingerprints on the items seized from Thomas' bag resulted from the inherent difficulty of obtaining fingerprint evidence from the surfaces of the items seized, and did not necessarily exculpate the defendant. The evidence was therefore directly relevant to show that Thomas knowingly possessed the weapons and drugs that he was charged with possessing.[8]

### III. CONCLUSION

For these reasons, we conclude that the district court did not err in refusing to suppress the evidence seized from Thomas' bag. Nor was it erroneous for the court to admit the fingerprint testimony at trial. Appellant's conviction is therefore

AFFIRMED.

---

**8.** Thomas further contends that the presentation of this evidence was somehow prejudicial, inasmuch as it may have caused the jury to believe that it was Thomas' "fault" that the items lacked fingerprints and that it "should be held against him." Brief for Appellant at 6. On the contrary, it appears that at most a reasonable jury would find such a lack of evidence to be neutral in assessing guilt. We fail to discern how the evidence could possibly give rise to the prejudice alleged by Thomas.