COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


GARY LAMONT THOMPSON

MEMORANDUM OPINION[*] BY
v.   Record No. 2395-98-2     JUDGE RICHARD S. BRAY
FEBRUARY 1, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Ernest P. Gates, Judge Designate

Gregory W. Franklin, Assistant Public
Defender (David J. Johnson, Public Defender,
on brief), for appellant.

Michael T. Judge, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Gary Lamont Thompson (defendant) was convicted in a bench

trial for possession of cocaine with intent to distribute. On

appeal, he contends that the trial court erroneously denied his

motion to suppress evidence seized in violation of the Fourth

Amendment during an inventory search of an automobile. We agree

and reverse the conviction.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

        [*] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon the defendant to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980)).  "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve issues of both law and fact, reviewable de novo on appeal. Ornelas v. United States, 517 U.S. 690, 699 (1996).  However, "[i]n performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citation omitted).

On April 29, 1997, Richmond Detective William Burnette and Police Officer Charles Battle observed defendant operating a vehicle bearing an expired city decal.  Battle "turned around and got in behind" defendant but did not activate pursuit lights or siren.  Defendant immediately "took off at a high rate of speed," traveled one block, "pulled over . . . real quick" and properly parked along the street.  Defendant then locked the car, "jumped from the vehicle, ran into the [adjacent] house," and "closed the door."  As defendant progressed toward the house, the officers

"told him to stop that he had an expired decal . . . and [they] wanted to talk to him about it."

Pursuing an investigation, the officers knocked at the door of the residence, without response, "called the tags [of the vehicle] in," and learned that it was registered to Barbara Scott[1] and had not been reported stolen.  A woman then exited the house, approached, and engaged Burnette and Battle in conversation. Police determined that the car was not the property of the woman but sought her assistance "to get the gentleman and come back outside."  She then re-entered the home, returning shortly to report that defendant "refused to come out."  Subsequent efforts to coax defendant from the residence were unsuccessful.

Uncertain "whether [defendant's possession of the car] was unauthorized use or not," the officers decided to impound it "for investigation until [they] could contact the owner" and summoned a tow truck.  Upon arrival of the truck, the driver gained access to the locked car using a "Slim Jim," and the officers undertook an inventory of its contents pursuant to departmental procedure. Inside a jacket found resting on the front seat, the officers discovered "about seventy some hits of crack cocaine," the offending contraband.

---

[1] Subsequently, Barbara Scott confirmed her ownership of the vehicle and that defendant "drove it that particular day for [her]."

In denying defendant's motion to suppress, the trial court concluded that the seizure of the car was proper, because "defendant [d]id not own it, ha[d] left the car and gone into the house and essentially refuse[d] to come back out and identify who owns the car," and approved an inventory search incidental to impoundment. The Commonwealth counters defendant's continued Fourth Amendment challenge on appeal with argument that he had no expectation of privacy in an abandoned vehicle, and police acted reasonably under the circumstances.

## I. Standing

"A warrantless search is per se unreasonable and violative of the Fourth Amendment of the United States Constitution, subject to certain exceptions." Tipton v. Commonwealth, 18 Va. App. 370, 373, 444 S.E.2d 1, 3 (1994) (citation omitted). However, "[a] defendant can only claim a Fourth Amendment violation if he possesses a reasonable expectation of privacy in the object seized or the place searched." Hardy v. Commonwealth, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994) (citations omitted). "The test is whether the appellant objectively had a reasonable expectation of privacy at the time and place of the disputed search. In making the analysis the court looks to the 'totality-of-the-circumstances.'" McCoy v. Commonwealth, 2 Va. App. 309, 311, 343 S.E.2d 383, 385 (1986) (citations omitted).

In addressing standing in the context of motor vehicles, we have previously ruled that "[a]n accused has standing to object to

a search of an automobile . . . if he is the owner or in lawful possession of it."  Hardy, 17 Va. App. at 680, 440 S.E.2d at 436 (citation omitted).  Thus, "the mere fact that a vehicle is borrowed does not diminish the borrower's reasonable expectation of privacy in it."  Id. (citations omitted).

Generally, "[a] warrantless seizure of abandoned property is not a violation of the Fourth Amendment."  Commonwealth v. Holloway, 9 Va. App. 11, 17-18, 384 S.E.2d 99, 103 (1989).

> One who voluntarily abandons property forfeits any expectation of privacy he or she may have in it.  [United States v. Thomas, 864 F.2d 843, 845 (D.C. Cir. 1989)].  Therefore, he or she has no standing to complain of the property's search and seizure.  United States v. Kendall, 655 F.2d 199, 200 (9th Cir. 1981).
>
> Abandonment in the context of the Fourth Amendment is different from the property law concept of abandonment.  Thomas, 864 F.2d at 845; United States v. Jackson, 544 F.2d 407, 409 (9th Cir. 1976).  A person may retain a property interest in personal property while, at the same time, relinquishing his or her reasonable expectation of privacy in that property.  Id.  A person's "[i]ntent to retain a reasonable expectation of privacy" determines whether the property has been abandoned so as to permit its seizure without a warrant.  Kendall, 655 F.2d at 200.
>
> Whether a person intends to retain a reasonable expectation of privacy in property is to be determined by objective standards.  United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir. 1986); Kendall, 655 F.2d at 201; contra United States v. Knox, 839 F.2d 285, 293 (6th Cir. 1988).  Such an intent may be inferred from words,

> acts, and other objective facts. Nordling,
> 804 F.2d at 1469; Jackson, 544 F.2d at 409.
>
> The determination of this intent must be
> made after consideration of all relevant
> circumstances, but two factors are
> particularly important: denial of ownership
> and physical relinquishment of the property.
> Nordling, 804 F.2d at 1469. If a person
> relinquishes possession and disclaims
> ownership of personal property, he or she
> surrenders any expectation of privacy in
> that property. United States v. McKennon,
> 814 F.2d 1539, 1546 (11th Cir. 1987).

Id. at 18, 384 S.E.2d at 103.

Here, the Commonwealth's reliance on abandonment to deny defendant standing to object to the warrantless search is misplaced. In contrast to abandonment, defendant's conduct was consistent with the continuing assertion of an established possessory right and an attendant expectation of privacy in the vehicle. He properly parked the car on a public street, locked the doors, and proceeded into the adjacent house. Under such circumstances, his refusal to engage in a consensual encounter with the officers, despite their repeated entreaties, did not manifest abandonment.[2]

## II. The Search

The Commonwealth's contention that the seizure and search of the vehicle was supported by probable cause is likewise without merit. "[P]robable cause is a flexible, common sense

---

[2] The record does not disclose that the police intended to issue defendant a summons. See Code § 19.2-74.

standard.  It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime[.]"  Texas v. Brown, 460 U.S. 730, 742 (1983) (citation omitted).

On the instant record, defendant's unwillingness to speak with police, together with information that the vehicle was registered to a female, clearly did not give rise to probable cause to believe that the car was stolen or otherwise implicated in criminal activity, especially when police were aware that the car had not been reported stolen.[3]  Citizens routinely operate vehicles owned by others of a different gender and oftentimes quite properly elect not to converse with police.[4]

Accordingly, the seizure and search of the vehicle was constitutionally impermissible under the circumstances of this case, and the court erroneously admitted the resulting evidence. We, therefore, reverse the conviction.

Reversed and dismissed.

---

[3] The record does not suggest that impoundment was prompted by the expired inspection decal.

[4] Illinois v. Wardlow, ___ U.S. ___ (2000), decided after the instant appeal was briefed and argued before this Court, does not alter the result, although the decision may have provided support for a Terry stop of defendant.