# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
                                     )
     v.                         )
                                       )     I.D. #1708012318
RYDELL MILLS, )
                                       )
          Defendant.           )

## MEMORANDUM OPINION

**Upon Defendant's Motion for Postconviction Relief: DENIED**

**Submitted: August 8, 2022**
**Decided: November 28, 2022**

Mark Denney, Esquire and Anthony J. Hill, Esquire, DEPUTY ATTORNEYS GENERAL, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Natalie Woloshin, Esquire, WOLOSHIN, LYNCH & ASSOCIATES, P.A., Wilmington, Delaware, for Mr. Mills.

**LeGrow, J.**

The defendant was convicted by a Superior Court jury of several drug dealing offenses as well as resisting arrest with force or violence. The charges arose after an anonymous 911 call directed police to a backyard late at night. There, the officers came across the defendant, who concealed his hands and stood with his back to them. When instructed by the officers to put up his hands, the defendant instead ran from the backyard. In the alley bordering the side of the house, he engaged in a struggle with the officers who attempted to detain him. After the defendant was taken into custody, the officers returned to the backyard. In the spot where the defendant had been standing when the police entered the backyard, the officers found cocaine, a digital scale, and a cell phone lying on the ground. Additional drugs and drug paraphernalia were found in other areas in the yard. Two other cell phones were recovered in the alley where the defendant and police officers engaged in the struggle preceding his arrest.

Police officers obtained warrants to search all three cell phones, but only the cell phone found in the backyard yielded relevant evidence. That cell phone contained numerous text messages that, according to the State's drug dealing expert, indicated the cell phone's owner was dealing cocaine and heroin in the two weeks before the defendant's arrest. Other text messages indicated the defendant owned the phone. The cell phone evidence was a significant part of the State's case connecting the defendant to the drugs found in the backyard.

The defendant has filed a timely motion for postconviction relief raising one argument: his trial counsel was ineffective for failing to move to suppress the evidence obtained from the cell phones. The defendant contends the warrants issued for the cell phones did not meet constitutional standards, and the evidence would have been excluded had trial counsel filed a suppression motion before trial. Instead, however, trial counsel concedes he mistakenly failed to review the warrants.

A threshold issue raised by the defendant's motion is whether he has standing to challenge the search of the cell phone found in the backyard, or whether he abandoned that property by running away from it and leaving it in a publicly accessible area. If the property was abandoned, the defendant does not have standing to argue that his Fourth Amendment rights were violated by the search. Because the defendant relinquished his expectation of privacy in the phone by leaving it in someone else's backyard and running away from it, he could not have successfully challenged the warrant or suppressed the evidence before trial. Accordingly, the defendant's motion for postconviction relief must be denied because he was not prejudiced by trial counsel's mistake.

**FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the record, including the Delaware Supreme Court's decision on direct appeal and the trial testimony and exhibits

appended to the defendant's motion for postconviction relief. Unless otherwise noted, none of the facts are disputed.

## A. The initial encounter between Mills and the police

Shortly before midnight on August 17, 2017, the Wilmington Police Department ("WPD") received an anonymous phone call urging them to check out the backyard at 307 E. 23rd Street in Wilmington. Two WPD officers, Donald Palmatary and Robert DiRocco, drove to the area and entered the alleyway leading to the backyard of that address. The officers drew their handguns and used the flashlights attached to the weapons to illuminate their path. Upon entering the backyard, Officer Palmatary saw a man, later identified as the defendant, Rydell Mills, standing close to the residence's back corner. Mills, who appeared surprised by the officers' presence, kept his back turned and his hands concealed and announced he was urinating. Mills' posture and actions seemed inconsistent with that statement, and Officer Palmatary ordered Mills to show his hands. Mills did not immediately comply, but when he turned around, Officer Palmatary saw Mills was holding an object that Officer Palmatary quickly concluded was a digital scale.[1]

As Officer Palmatary was backing up and holstering his firearm, Mills attempted to run past him and out of the backyard. Officer Palmatary grabbed Mills' arm to detain him, and Mills continued toward the alley along the side of the house,

---

[1] App. to Mills' Am. Mot. for Postconviction Relief [hereinafter "A"] 115 at 31.

3

dragging Officer Palmatary with him.[2]  Officer DiRocco also tried to grab Mills, but

he initially evaded his grasp.  Officers Palmatary and DiRocco took Mills to the

ground in the alleyway and repeatedly ordered him to stop resisting.  Mills continued

to resist and struggle as he moved through the alley and toward the street.[3]  With the

help of additional WPD officers called to the scene, Mills eventually was detained

and handcuffed.

After taking Mills into custody, Officers Palmatary and DiRocco, and their

colleague, Officer Joshua Hiers, returned to the backyard to continue their

investigation.  First, near the steps leading to the basement, Officer DiRocco located

a small sandwich bag containing a substance that appeared to be crack cocaine.[4]  In

the location where Mills had been standing when the officers initially entered the

backyard, Officer Palmatary found loose pieces of crack cocaine, along with a digital

scale and a cell phone lying on the ground among the pieces of cocaine.[5]

The cell phone located on the ground where Mills had been standing was a

black ZTE cellular phone, Model Z320 (the "black flip phone").[6]  Two other cell

phones were found on the ground in the alleyway where Mills struggled with the

---

[2] *Id*. at 32.

[3] A116 at 33; A117 at 37.

[4] A117 at 39-40; A143 at 141.

[5] A117 at 40; State Ex. 10, A118 at 44.  The cover to the digital scale had popped off, but the scale was not broken.  A117 at 40.

[6] State Ex. 25, A120 at 51-52.

WPD officers.[7]   The two phones recovered in the alleyway were a blue AT&T cellular phone, Model Z222 (the "blue AT&T phone") and a black Apple iPhone, Model A1784 (the "iPhone").   Officer Palmatary collected all three phones. Elsewhere in the backyard, WPD officers located more cocaine, heroin, and drug paraphernalia.

## B. The Search Warrants

Officer Palmatary applied to the Justice of the Peace Court for warrants to search each of the three phones.[8]   The three warrants substantively were the same and were supported by the same affidavit of probable cause.   The probable cause affidavits explained the circumstances of Mills' arrest and the recovery of the phones and averred that "persons involved in criminal acts will utilize [cellphones] to further facilitate their criminal acts and/or communicate . . . with co-conspirators."[9]   The Justice of the Peace Court approved all three warrants, authorizing WPD to search each of the three phones for:

> any/all data, stored by whatever means, . . . to include but not limited to registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information, text messaging, writings, user names, subscriber identifiers, buddy names, screen names, calendar information, call logs, electronic mail, telephone numbers, any similar

---

[7] State Ex. 26, A120 at 52-53; A928 ¶ 5.
[8] The three warrants appear in the record as follows: The warrant for the blue AT&T Model Z222 phone appears at A910-A916; the warrant for the black Apple iPhone appears at A917-A923; and the warrant for the black ZTE Model Z320 phone appears at A924-A930.
[9] *See* A921 ¶ 8.

5

information/data indicia of communication, and any other information/data pertinent to this investigation within said scope.[10]

The warrants permitted WPD to conduct the search over a one-month period preceding the events of August 17, 2017.

The Justice of the Peace Court approved the three warrants on August 22, 2022. WPD then searched all three phones, but only the black flip phone yielded evidence on which the State relied at trial. WPD attempted to use software to extract data from the three phones, but those efforts did not produce any significant evidence. There was no data extracted from the iPhone, and the extraction report for the blue AT&T phone only contained contact information.[11]

WPD did, however, take photographs of the contents of the black flip phone, namely text messages and contacts found in the phone.[12] The officer examining the phone took over 600 photographs, some of which the State introduced during trial. The phone number associated with the black flip phone was connected with Mills through a DELJIS search, and the State also identified a text message sent from the phone stating "it's Rydell."[13]

---

[10] A910; A917; A924.
[11] A042-A046; A051-A069.
[12] A076-A080.
[13] State Ex. 30, A561-A562.

## C. Trial, Conviction, Sentencing, Appeal, and Resentencing

A grand jury indicted Mills for Aggravated Possession (Cocaine), Drug Dealing (Cocaine), Drug Dealing (Heroin), Possession of Drug Paraphernalia, two counts of Resisting Arrest by Force or Violence, Second Degree Assault, and Loitering. The State dismissed the assault charge before trial. Mills retained private counsel to represent him at trial ("Trial Counsel").

During discovery, the State produced to Trial Counsel the photographs taken from the black flip phone and the extraction reports for the blue AT&T phone and the iPhone. Trial Counsel also requested production of the warrants obtained for the three phones.[14] Although the State produced the first page of each warrant, which described the scope of the authorized search and the item to be searched, it did not produce the complete warrant applications for the phones, including the affidavits of probable cause.[15] This was an oversight by the State, and Trial Counsel concedes he neither received nor reviewed the three warrants to determine whether to file a motion to suppress evidence obtained from the phones.[16]

In order to prevail at trial on the drug-related charges, the State had to connect Mills to the cocaine, heroin, and drug paraphernalia recovered from the backyard of 307 E. 23rd Street. Unsurprisingly, therefore, Mills' defense at trial was that the

---

[14] A029 ¶ 8.
[15] A038; A047; A072.
[16] State's Resp. in Opp. to Postconviction Mot., D.I. 93 at 8; Aff. of Trial Counsel, D.I. 92 at 1-2.

drugs found in the backyard did not belong to him. To prove the drug-related charges, the State relied on (i) Officer Palmatary's testimony that he saw Mills holding a digital scale, (ii) the proximity of the drugs to where Mills was standing when WPD entered the yard, and (iii) Mills' attempt to flee. But the text messages and contact information recovered from the black flip phone were fundamental to the State's effort to connect Mills to the drugs.

Sergeant Andrew Lloyd of the Delaware State Police testified for the State as its drug dealing expert. Lloyd, who had investigated drug crimes on behalf of the Delaware State Police and on joint task forces with federal agencies, reviewed the evidence collected in the case and gave his opinion regarding how cocaine and heroin typically are packaged and sold, how drug dealers communicate with prospective purchasers, and the characteristics that distinguish a drug user from a drug dealer.[17] Lloyd opined that the quantity of drugs found in the backyard of 307 E. 23rd Street, the way those drugs were packaged, and the way they were hidden in various locations in the yard was consistent with a drug dealing operation.[18] He testified that drug dealers often carry and utilize more than one phone.[19] Sergeant Lloyd also reviewed some of the text messages recovered from the black flip phone, explained some of the slang used in those messages, and opined that certain text

---

[17] A154-A156.
[18] A156 at 193-96; A158-159 at 204-05.
[19] A155 at 191.

messages indicated the phone's operator was dealing drugs.[20] The State admitted into evidence three exhibits that contained photographs of text messages obtained from the black flip phone in the two weeks before Mills' arrest.[21] Officer DiRocco also testified the phone number for the black flip phone was linked to Mills through a DELJIS inquiry.[22]

During closing arguments, the State argued the evidence demonstrated beyond a reasonable doubt that Mills possessed the drugs found in the backyard of 307 E. 23rd Street and that he was dealing those drugs. The State pointed out that the cocaine was found on the ground near where Mills was standing when WPD entered the backyard, and heroin was found near the fence within arms' reach of where Mills was standing. In addition, the State argued the quantity of drugs and the presence of paraphernalia associated with drug dealing indicated that the drugs were part of a dealing operation. The State also asserted that Mills' effort to flee and resist arrest demonstrated consciousness of guilt. Finally, the State emphasized the text messages obtained from the black flip phone, relying on those text messages to argue that Mills possessed the drugs found in the backyard and intended to deal those drugs.[23]

---

[20] A157-A158.

[21] State Ex. 28-30, A162-A570. Although the warrants authorized WPD to search the phones for data created during the month before Mills' arrest, the State and Trial Counsel agreed to limit the evidence introduced at trial to the two-week period before the arrest. *See* A088-A089.

[22] A143 at 142-43.

[23] A589-A590 at 70-73; A596-A597 at 97-99.

After deliberating, the jury found Mills guilty of Drug Dealing (Cocaine), Drug Dealing (Heroin), Possession of Drug Paraphernalia, two counts of Resisting Arrest by Force or Violence, and Loitering. The jury could not reach a unanimous verdict as to the Aggravated Possession charge. A presentence investigation was completed, and the State filed a motion to declare Mills a habitual offender as to his two convictions for resisting arrest with force or violence. The Court granted the order declaring Mills a habitual offender and sentenced him to a total of 44 years and six months at Level V, suspended after 20 years for periods of partial incarceration and probation.

Mills then appealed to the Delaware Supreme Court. That Court affirmed the convictions in part and reversed them in part, holding Mills' two separate convictions for Resisting Arrest with Force or Violence violated the multiplicity doctrine drawn from the Double Jeopardy Clauses of the United States and Delaware Constitutions.[24] The Supreme Court also held that the accidental omission of the intent element from the jury instruction for Drug Dealing (Heroin) required reversal as to that conviction.[25] The Court otherwise affirmed Mills' convictions. Upon remand, rather than retry Mills on the Drug Dealing (Heroin) charge, the State elected to accept a modification of that conviction to the lesser-included offense of

---

[24] *Mills v. State*, 201 A.3d 1163, 1165 (Del. 2019).
[25] *Id*. at 1166.

knowing possession of heroin with an aggravating factor. The Court then resentenced Mills, imposing the same 20-year unsuspended Level V sentence previously imposed.

Mills filed a motion for postconviction relief and motion for appointment of counsel on February 7, 2020.[26] The Court granted Mills' motion to appoint counsel, and Natalie Woloshin, Esquire ("Postconviction Counsel") was appointed in that capacity. Postconviction Counsel filed an Amended Motion for Postconviction Relief (the "Postconviction Motion") raising one issue: whether Trial Counsel was ineffective in failing to obtain the cell phone warrants and file a motion to suppress the evidence obtained through the warrants.[27] Trial Counsel filed an affidavit in response to the Postconviction Motion. In that affidavit, Trial Counsel conceded he was obligated to review the warrants and raise any meritorious motions as part of his trial preparation, and he failed to do so in this case.[28] The State filed a response in opposition to the Postconviction Motion, and Postconviction Counsel filed a reply in further support of the motion. The Court held argument with counsel on July 15, 2022. After argument, counsel submitted supplemental briefs addressing (i) the alleged overbreadth of the searches authorized in the warrants, and (ii) the time

---

[26] D.I. 70; D.I. 71.
[27] D.I. 86.
[28] D.I. 92.

11

frame in which the searches were conducted. The Court then took the Postconviction Motion under advisement.

## ANALYSIS

In the Postconviction Motion, Mills argues Trial Counsel's failure to review the three cell phone warrants fell below an objective standard of reasonableness and prejudiced Mills by allowing the State to introduce significant incriminating evidence that would have been suppressed had Trial Counsel filed a motion to do so. Mills argues that if Trial Counsel had reviewed the warrants, he would have moved to suppress the cell phone evidence before trial, and that motion would have been successful. Mills contends Trial Counsel could have moved to suppress on three independent grounds: (1) the affidavits of probable cause supporting the warrants failed to establish a nexus between the cell phones WPD sought to search and the crimes allegedly committed;[29] (2) WPD searched the phones more than 10 days after the warrants were issued, at which time the warrants were stale and the search was invalid;[30] and (3) the warrants were general warrants that permitted a search of "any and all data" on the three cell phones in violation of the Fourth Amendment's particularity requirement.[31]

---

[29] *See* D.I. 86 at 21-30.
[30] *See id.* at 31-37.
[31] D.I. 91.

12

The State responds that only one of the three phones – the black flip phone – is relevant for purposes of the Postconviction Motion because WPD was unable to extract any incriminating data from the blue AT&T phone or the iPhone and therefore there was nothing that Trial Counsel could have moved to suppress with respect to those phones. As to the black flip phone, the State offers two arguments. First, the State contends Mills would not have had standing to move to suppress the evidence obtained from the black flip phone because he abandoned that phone in the backyard and therefore had no reasonable expectation of privacy in it. Second, the State argues that even if Mills had standing to challenge the search, the warrant and search were constitutional because (1) the affidavit of probable cause set forth a valid nexus between the alleged drug crimes and the cell phones that were the subject of the warrant; (2) the ten-day limitation Mills seeks to invoke relates to evidence that is "fleeting or evanescent in nature" and for which the probable cause might go "stale"; and (3) the authorized search met the particularity requirement because it was limited in time and related to a flip phone rather than a smart phone. The ten-day limitation, the State contends, does not apply to stable and secure evidence like data contained on a cell phone held in police custody.

**A. Mills' Motion is not procedurally barred.**

Before addressing the merits of any postconviction claim, this Court first must determine whether the motion procedurally is barred under Rule 61.[32] A motion for postconviction relief may be barred for timeliness and repetition, among other things. A Rule 61 motion is untimely if it is filed more than one year after a final judgment of conviction.[33] For a defendant who files a direct appeal, this period accrues when the appeal process is complete.[34] A defendant also is barred from filing successive motions for relief under the rule.[35] Rule 61 further prohibits motions based on any ground for relief that was not asserted in the proceedings leading up to the judgment of conviction, unless the movant demonstrates "[c]ause for relief from the procedural default" and "[p]rejudice from violation of the movant's rights."[36] Finally, the Rule bars consideration of any ground for relief that previously was adjudicated in the case.[37]

Here, both sides agree Mills' Postconviction Motion was filed timely, is his first such motion, and presents an ineffective assistance of counsel claim, which

---

[32] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[33] Super. Ct. Crim. R. 61(i)(1).
[34] *Younger*, 580 A.2d at 554.
[35] Super. Ct. Crim. R. 61(i)(2); *see id.* 61(d)(2)(i)-(ii) (regarding the pleading requirements for successive motions).
[36] *Id.* 61(i)(3)(A)-(B).
[37] *Id.* 61(i)(4).

14

could not be raised at trial or on direct appeal. Mills' Postconviction Motion therefore is not barred, and the Court may consider its merits.

**B. Trial Counsel's failure to review the search warrants, although unreasonable, was not prejudicial because Mills did not have a privacy interest in the black flip phone.**

To prevail on a claim for ineffective assistance of counsel, a defendant must meet the well-known "*Strickland* standard," *i.e.*, that counsel's representation fell below an objective standard of reasonableness, and the defendant was prejudiced by counsel's errors.[38] *Strickland* sets a high bar. First, there is a strong presumption that counsel's representation was reasonable.[39] And, a defendant must meet both prongs of the *Strickland* standard to prevail. Accordingly, even if counsel's representation fell below the *Strickland's* reasonableness standard, postconviction relief will not be granted unless the error prejudiced the proceedings. Prejudice is defined under *Strickland* as the "reasonable probability that, *but for* counsel's errors, the result of the proceeding would have been different."[40] The moving defendant must make specific allegations of prejudice and substantiate them; vague allegations or conclusory statements will not suffice.[41]

---

[38] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[39] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[40] *Strickland*, 466 U.S. at 687-88 (emphasis added).
[41] *Wright*, 671 A.2d at 1356; *Monroe v. State*, 2015 WL 1407856, at *3 (Del. Mar. 25, 2015).

15

A defendant cannot be prejudiced by his counsel's failure to file a suppression motion if that motion would not have succeeded on its merits.[42] Although Trial Counsel acknowledges he should have obtained and reviewed the complete warrant applications, his failure to do so ultimately did not prejudice Mills' case because any motion to suppress would not have succeeded as to the black flip phone, which was the only phone from which incriminating evidence was obtained. Mills lacked any legitimate expectation of privacy in that phone because he abandoned it.

The United States Constitution's Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"[43] Fourth Amendment rights are "personal" in the sense that they may not be asserted vicariously.[44] In order to have standing to assert a claim that a search violated the Fourth Amendment, the defendant must have standing, which in the context of the Fourth Amendment means the defendant must have "a legitimate expectation of privacy" in the property that was searched.[45] The moving defendant bears the burden of proving his standing.[46]

---

[42] *Bratcher v. State*, 2008 WL 2475741, at *1 (Del. June 20, 2008); *State v. Barksdale*, 2020 WL 2096148, at *6 (Del Super. Apr. 30, 2020).

[43] U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that the Fourteenth Amendment makes the Fourth Amendment applicable to the states); *see also Del. Const.* art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . .").

[44] *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).

[45] *Rakas*, 439 U.S. at 143.

[46] *U.S. v. Carlisle*, 614 F.3d 750, 758 (7th Cir. 2010) (citing *U.S. v. Salvucci*, 448 U.S. 83 (1980)).

Abandoned property is not subject to Fourth Amendment protection.[47] Abandonment in the context of Fourth Amendment jurisprudence is distinct from the "property law notion" of that term.[48] That is, "it is possible for a person to retain a property interest in an item, but nonetheless relinquish his or her reasonable expectation of privacy in the object."[49] Abandonment in the Fourth Amendment context is an objective inquiry: did the defendant's words and acts show a relinquishment of his reasonable expectation of privacy?[50] A reviewing court's inquiry does not consider whether the defendant intended to give up his ownership of the property.[51] Rather, the Court considers the totality of the circumstances in determining whether the defendant objectively relinquished his privacy expectations.[52]

Here, Mills' conduct shows that he relinquished his reasonable expectation of privacy in the black flip phone. Mills was in a backyard around the corner from his house. The house did not belong to Mills, and the homeowner acknowledged people

---

[47] *U.S. v. Pitts*, 422 F.3d 449 (7th Cir. 2009) (citing *Abel v. U.S.*, 362 U.S. 217 (1960)); *Vick v. Ellingsworth*, 1985 WL 14158, at *2 (Del. Dec. 20, 1985).

[48] *U.S. v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989); *State v. Lu*, 2012 WL 6845676, at *3 (Del. Super. Nov. 26, 2012).

[49] *Thomas*, 864 F.2d at 845.

[50] *Vick*, 1984 WL 14158, at *2; *State v. Dixon*, 2001 WL 209907, at *4 (Del. Super. Feb. 15, 2001); *see also U.S. v. Rem*, 984 F.2d 806, 811 (7th Cir. 1993).

[51] *Vick*, 1984 WL 14158, at *2.

[52] *Patton v. State*, 2019 WL 1941527, at *1 (Del. Apr. 30, 2019); *Benge v. State*, 2003 WL 21526885, at *2 (Del. Super. June 26, 2003).

frequently cut through or hung around the backyard.[53] The homeowner testified people she did not know used drugs in the backyard, and she believed there was someone living there at one point.[54] Area residents frequently cut through the backyards on that street, and there were openings in the fence around the yard that allowed people to enter without the homeowner's knowledge or permission.[55] The record does not suggest that the homeowner knew Mills was in the backyard that night.

When Officer Palmatary entered the yard, saw Mills, and ordered him to turn around, Mills almost immediately fled the yard. In doing so, he dropped the object he had been holding.[56] Whether that object was a digital scale or the black flip phone is not relevant for purposes of the pending motion. Mills left the digital scale, the flip phone, and the crack cocaine on the ground in a backyard that he neither owned nor had permission to use. He ran away from those items, attempting to evade detention by the police. In so doing, he left the black flip phone and other property

---

[53] A583 at 43-45.

[54] *Id*. at 45.

[55] *Id*. at 44.

[56] At trial, Mills' counsel argued to the jury that it could have been the black flip phone, rather than a digital scale, in Mills' hand at the time Officer Palmatary ordered Mills to put up his hands. A592 at 79-80. If the Court adopted this version of the facts, the evidence that Mills abandoned the black flip phone is even stronger, because Mills dropped the object in his hand when he attempted to flee. Ultimately, however, the distinction is not issue-determinative. Both the scale and the flip phone were found with the crack cocaine in the spot where Mills was standing when Officer Palmatary entered the yard. The only reasonable conclusion is that Mills intentionally left all those items behind.

18

available to the homeowner, the police, and anyone else who, like Mills, entered or passed through the backyard.[57] These actions showed an intent to relinquish Mills' expectation of privacy in the phone and other property left in the yard.

Courts in Delaware and other jurisdictions have held that defendants relinquished their expectation of privacy by intentionally leaving property in a publicly accessible place. For example, in *United States v. Thomas*, the defendant, upon seeing the police, entered an apartment building and left the bag he was carrying in front of an apartment door on the building's second floor.[58] The defendant then walked away from the bag. The D.C. Circuit Court of Appeals affirmed the District Court's ruling that Thomas intended to abandon the backpack "for Fourth Amendment purposes."[59] The Circuit Court reasoned that, "in order to prevent discovery of his bag by the police, Thomas left it behind in a public place where he retained no reasonable expectation of privacy in it."[60] That action, the Court reasoned, was similar to a person who tosses an object during police pursuit.[61]

Delaware courts have reached the same conclusion. In *Patton v. State*, the Delaware Supreme Court held that a defendant who left his backpack on the ground in a busy parking lot, walked far away from it, and limited his ability to protect or

---

[57] The inquiry likely would be different if Mills was in his own backyard or was there as a guest of the homeowner.

[58] 864 F.2d 843 (D.C. Cir. 1989).

[59] *Thomas*, 864 F.2d at 846.

[60] *Id.*

[61] *Id.* at 846-47 (citing *U.S. v. Collis*, 766 F.2d 219 (6th Cir. 1985)).

even see it, objectively abandoned the backpack.[62]  The Court explained "[w]hen someone leaves personal property in plain sight, in a busy place, and departs the area, that person has no reasonable expectation of privacy in the abandoned personal property."[63]  Similarly, in *State v. Dixon*, the defendant saw police officers approaching the area, placed his laundry basket next to a car on a public sidewalk, and walked away from it.  Those actions, this Court held, demonstrated an intent to abandon the laundry basket, "at least in the constitutional sense."[64]  The *Dixon* Court cited several cases from other jurisdictions that accord with its holding.[65]

Mills does not persuasively argue that his conduct did not exhibit an objective intent to abandon his expectation of privacy in the black flip phone.  Although Mills correctly points out that "[p]lacing a bag or container on the ground is not *per se* abandonment,"[66] Mills' actions rose well beyond simply placing the black flip phone on the ground.  Instead, when ordered to put up his hands, Mills dropped the object in his hand (either a scale or the black flip phone) and ran away from the area, leaving drugs, a scale, and the black flip phone on the ground where he was standing.  He

---

[62] 2019 WL 1941527, at *1 (Del. Apr. 30, 2019).

[63] *Id.*

[64] 2001 WL 209907, at *4-5 (Del. Super. Feb. 15, 2001).

[65] *Id.* at *5, n.25 (citing cases in which courts concluded that placing property near a dumpster and walking away, "stowing" property in a crevice between bus seats and taking a seat in the next row, or placing a key case next to a fence post and walking away all constituted abandoning a reasonable expectation of privacy in the property at issue).

[66] Def.'s Reply in Supp. of his Mot. for Postconviction Relief at 5 (citing *Benge*, 2003 WL 21526885, at *2).

20

did not own or even have permission to use the yard where he left the property. Those actions show that Mills voluntarily discarded the property or left it behind in an effort to distance himself from incriminating evidence. Those circumstances indicate Mills intended to forego his expectation of privacy in that property.[67]

Mills also endeavors to argue that he did not intend to discard the phone and instead accidentally dropped it during his struggle with the police. The record does not support this view of the facts. Although Mills did engage in a struggle with WPD that began in the backyard, most of the struggle occurred in the alley, which is where Mills' other two phones were found. The testimony from the officers on the scene was that Mills initially evaded Officer Palmatary's and Officer DiRocco's attempts to detain him, and was a significant distance from the black flip phone, digital scale, and drugs when his physical struggle with the officers began.[68] Although Mills persuasively could argue that he did not voluntarily relinquish or discard the other two phones, and instead accidentally lost them during the struggle,

---

[67] *See Benge*, 2003 WL 21526885, at *2.

[68] *See* A115 at 30 (Officer Palmatary testifying that he stepped back from where Mills was standing when Mills turned around); A141 at 135 (Officer DiRocco testifying that Officer Palmatary was backing up when Mills turned around); A115-A116 at 31-33 (Officer Palmatary initially grabbed Mills as he charged past, but Mills broke free and was tackled by Officer DiRocco toward the opening to the alley); A141 at 135-36 (Mills "slides right past" Officer Palmatary and comes toward Officer DiRocco); A141 at 135 (Mills gets past Officer DiRocco and is "trying to get southbound through the alleyway," at which point Officer DiRocco tackles him); A116-A117 at 33-38 (describing struggle that occurred in the alley); A141-A142 at 136-140 (same); A117 at 39-40 (describing finding phone, scale, and loose pieces of crack cocaine "almost exactly where Mills was standing").

the trial evidence does not support that conclusion with respect to the black flip phone.

For all the foregoing reasons, Mills did not have a reasonable expectation of privacy in the black flip phone.  Accordingly, a motion to suppress would not have succeeded, Mills has not satisfied *Strickland*'s prejudice prong, and he is not entitled to postconviction relief.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Postconviction Relief is **DENIED.**

**IT IS SO ORDERED.**